ULYSSES D. WARD, GUARDIAN, AND MARTHA FULTON, v. RUSSELL F. TINKHAM, ADMINISTRATOR OF THE ESTATE OF CALEB HUTTON, DECEASED.

*Executors and administrators—Accounting—Appeal—Province of jury—Duty of administrator—Investment of trust funds—Consent of cestui que trustent—Liability on official bond.*

1. On the trial of an appeal from an order of the probate court settling an administrator's account, the jury, if one is called, only aid the court in arriving at a conclusion upon questions of fact, their findings not being *conclusive*, but *advisory*, bearing a close analogy, in this respect, to verdicts in chancery cases. In such cases error cannot be predicated upon the charge of the court, which will be examined for the purpose of ascertaining if the court, in the conclusions reached, has applied correct legal principles in the disposition of the case.

2. It is the duty of an administrator to collect the assets, pay the debts, and settle and wind up the estate; and if he has sufficient money in hand to pay such debts, there is no reason for delay after the filing of the report of the commissioners on claims, if no appeal is taken therefrom. The parties interested have a right to have their shares distributed, at *that* time, and the administrator has no right to delay distribution until he can col-

lect and convert the assets into money. When they are not required for the payment of debts or expenses of administration, the administrator is not justified in delaying distribution for the purpose merely of collecting in moneys security invested, where there is no danger of loss.

3. An administrator has no right to convert the assets to his private use, nor speculate with them nor invest them in trade or manufacturing business, either upon his own account or that of the estate.

4. An administrator who thus violates his trust, and seeks to justify his action by having procured the assent of the parties interested, must be prepared to show that he has acted in entire good faith, and that he obtained such assent upon full and fair representations and information communicated to them of all the facts and circumstances attending the risk to the fund, and of the proposed investment. He must be guilty of no fraud, falsehood, or deceit in obtaining such consent, and the burden of proof is upon him to show this, and in no other way can he be protected in deviating from the line of his fiduciary duty.

5. The liability of sureties on an administrator's bond is co-extensive with that of the principal, and can be extended no further than his. Any dealings by those interested in the bond with the principal which would change or increase such liability will operate to discharge the sureties.

6. The question arising on the settlement of the final account of an administrator involves his official acts in collecting, controlling, and managing the estate, the disposition of the proceeds, and the balance on hand belonging to the estate awaiting distribution, which cannot be one amount in favor of the distributees, and another in favor of the sureties in the administrator's bond.

Error to Eaton. (Hooker, J.)    Argued April 21, 1887. Decided April 28, 1887.

Appeal from settlement of final account of administrator, who brings error.    Judgment of circuit court affirmed.    The facts are stated in the opinion.

*Huggett & Smith*, for appellant.

*Cahill & Ostrander*, for contestant Fulton.

*Parm S. DeGraff*, for contestant Ward.

CHAMPLIN, J.    Tinkham was administrator of the estate

of Caleb Hutton, deceased. The assets which came to his hands amounted to $32,000 or thereabouts, being all personal property, with the exception of real estate valued at $2,540. Commissioners on claims were appointed, who heard claims against the estate, and filed their report August 7, 1882. The total amount of claims proved against the estate was about $650. Caleb Hutton died in August, A. D. 1881, leaving Martha Hutton, his widow, and Inez Hutton, an infant and adopted child, him surviving, as sole heirs at law and distributees.

Tinkham was appointed administrator, September 21, 1881, and qualified, and proceeded to administer the estate, the larger part of which was already invested in notes, mortgages, and other securities. He collected in most of the outstanding securities, and in December, 1882, entered into a partnership in the lumbering business on his own account, and used and invested the assets of the estate of which he was administrator in such business, which proved a losing one. He was cited by the probate court to render his final account. He did so, and therein charged the widow with two items, one of $5,000 and the other of $8,200, which he claims were moneys which he used in the lumbering business, by and with the consent of the widow, as moneys belonging to her in his hands as administrator, and which under the circumstances should be charged to her as so much advanced to her. The probate court allowed $5,000, but disallowed the item of $8,200, and she and the infant appealed to the circuit court, where a trial was had before a jury, and resulted in a finding by the jury that both items should be disallowed, and the circuit court did disallow both of the items, and the administrator has brought the case here for review.

Complaint is made of the charge of the court to the jury, and also to the form of their findings. In matters of account, the jury, if one is called, only performs the duty of aiding

the court in arriving at a conclusion upon questions of fact. Their findings of fact are not conclusive, but advisory, and bear a close analogy, in this respect, to juries called in chancery cases.· In such cases error cannot be predicated upon the charge of the court, but this Court will look into the charge for the purpose of ascertaining if the court, in the conclusions it has reached, has applied correct legal principles in the disposition of the case. For reasons above stated, the exactness required in findings of fact in common-law cases is not necessary to be observed in cases of accounting in probate matters. The jury sat together, and heard the testimony in this cause, after which the court submitted to them these two questions:

"1. Shall the item of $5,000 be allowed as an advancement to the widow?

"2. Shall the item of $8,200 be allowed as an advancement to the widow?"

The jury answered, "No," to both questions.

It is the duty of an administrator to collect the assets, pay the debts, and settle and wind up the estate. The statute contemplates that in ordinary cases this will be done within one year and six months. How. Stat. §§ 5918, 5922.

If the administrator has sufficient money on hand to pay the debts, there is no reason for delay after the report of the commissioners on claims is filed, and no appeal is taken therefrom. The parties interested have a right to have their shares distributed at that time, and the administrator has no right to delay until he can collect and convert the assets into money. When they are not required for the payment of debts or expenses of administration, the administrator is not justified in delaying distribution for the purpose merely of collecting in moneys securely invested, where there is no danger of loss.

He has no authority to convert the assets to his private use, or speculate with the moneys of the estate, nor invest them

in trade or manufacturing business, either upon his own account or that of the estate. To employ trust funds in trade or in manufacture on the administrator's own responsibility has always been regarded as a breach of trust, and lies entirely outside the proper scope of administration functions.

An administrator who violates his trust in this respect, and who seeks to justify his action by having procured the assent of the parties interested, must be prepared to show that he has acted in entire good faith, and that he obtained such assent upon full and fair representations and information communicated to his *cestui que trustent* of all the facts and circumstances attending the risk to the fund, and of the proposed investment. He must be guilty of no fraud, falsehood, or deceit in obtaining such consent, and the burden of proof is upon him to show this, and in no other way can he be protected in deviating from the line of his fiduciary duty.

Upon the trial of this matter in the court below, and in the argument here, it was conceded that no consent could affect the rights or interest of the minor child. But the administrator claimed, and introduced testimony tending to prove, that he borrowed the item of $5,000 from the estate by the express consent and agreement with Martha Hutton, the widow, to use in his own private business, and that he also had her consent to invest the item of $8,200, belonging to the estate, in a lumbering business in which he was a partner. Martha Hutton introduced testimony tending to disprove that she ever gave such consent as claimed, or ever assented thereto, or had any knowledge of the fact that he was so using or appropriating the moneys of the estate. Upon this branch of the case the court instructed the jury as follows:

" So, if you shall find in this case that there has been any distribution of the estate by the administrator,—if anything has been paid upon the share of this widow, and received by her upon that share,—he should have credit for it upon his account; and it does not make any difference whether he

turned around and borrowed it the next minute or not. Take a case like that: When the money has been paid over to the widow, that discharges his obligations so far as that money is concerned; and although he might have borrowed it the next moment, and used it for his own purpose, and although he may have been unfortunate in that use, although he may not have given her security, although we may feel it was a very unwise thing for her to do,—a very improper thing for her to do,—nevertheless, if there was such an advancement, it is the end of the matter, and he should be allowed in this account. His liability to her would have to be enforced elsewhere. No trouble would arise in a case of that kind where it is clearly shown that the money was absolutely paid over and afterwards borrowed, but more difficulty arises where, from the character of the transaction, the proceedings are not so; as, for instance, where the arrangement is made and no money actually passed. This may be done. The true test is, what was the understanding of the parties?

"If the understanding of the parties was, in this transaction, that money, or a share, or a portion of a share, of this widow, was to be used by this administrator, or rather by Mr. Tinkham in his personal capacity, and used for his own purpose, he to account to her for it as a part of her estate, then he should be allowed for it here; otherwise he should not. So much, in a general way, upon that subject.

"If you find that either by the terms of the contract, or, although it wasn't by the terms of the contract, by their agreement or tacit acquiescence afterwards, the money of the estate was so used, then it should be allowed; but if it was paid without her direction or consent, either tacit or expressed, it should not be allowed. If she merely sanctioned the payment out of interest which should be paid upon her share of the estate,—as, for instance, if she had received a portion of this estate, and had loaned it to Mr. Tinkham, and had stipulated that the house should be paid for out of the interest upon that,—it would not justify payment from any other source. You will have to inquire into the facts, and say whether you believe the understanding between them to have been that the money of the estate—money coming into the estate from the obligations of the estate—was to be used or not. If it was, it is an advancement; if not, it is not.

"Under this same class comes the subject of loans. Now, as a general rule, an administrator has no business to loan the money of the estate. His office requires him to get the

money and distribute it, not loan it; and while, under some circumstances, it may be a proper thing to do, if all the parties interested acquiesce,—and where, as a matter of fact, I know it is frequently done, and perhaps for the interest of estates,—ordinarily that is not a power of the administrator; but, on the other hand, he may loan the money for anybody who chances to let him loan it for them; and if, after he has distributed a portion of this estate, if any of the parties desire him to loan it, he can do so.

"If Mrs. Hutton received from him, either by the payments of money to her, or by an arrangement to do so, and so treated it, or any portion of this estate, as her share, or part of her share, and then authorized him to loan it, he would have a right to do so. But the fact that he loaned it,—loaned money of the estate,—as money of the estate, by her consent, would not be a proper thing for him to do,—would not justify it. How far it might go to relieve the bondsmen upon their bond in any other proceeding we need not inquire; but I think an estate can hardly be complicated so much as to say that money loaned by the consent of one of the heirs should be allowed an administrator in his account because it was a hardship on a bondsman; that would hardly do. If they had been in a situation to acquiesce, and the loan was a proper one, and the administrator acted in good faith, it might possibly be different.

" But I instruct you in this case that no such loan should be allowed, nor should any loan be allowed here unless you find that the circumstances were such as to warrant you in coming to the conclusion that the widow and the administrator made the arrangement by which the money loaned was to be treated as the property of the widow herself. If you find that such an arrangement as that was made, then it should be allowed to him in his account here, and she would have to seek her remedy elsewhere.

" The burden of proof in the case, gentlemen, is upon the administrator. He must establish his right to have these items allowed by a preponderance of proof. I may add, in recurring to what has been said as to the arrangement of a loan, that the law requires good faith upon the part of the administrator; and you are not to imply a consent to treat money as an advancement from light circumstances, but it must appear plainly; and it must also appear that the arrangement, if tacit, was made with the full understanding on the part of the widow; at least there should be a freedom from fraud on the part of the administrator, and a freedom

from concealment. If, however, you find an absolute agreement—an express agreement—to so treat it, it should be allowed in this case. I was saying that the preponderance of proof is upon the administrator to establish his claims here. He comes here with his account. He says: ' This is my statement of what I have done with this estate;' and he must vindicate it by a preponderance of proof."

And again he said to the jury:

"I think, gentlemen, the substance of the direction with regard to the loan of five thousand dollars was this: That if you find that, by an arrangement made between the widow and the administrator (Mr. Tinkham), he was to take the sum of five thousand dollars of her money, and loan it either to himself or to Barnard, Huxtable & Company,—or, in other words, if she loaned it to him as a part of her share, whether that agreement was expressed or tacit,—it should be allowed; but I instructed you this is not to be inferred merely from the fact that he used it, and that she afterwards loaned it, but will depend upon something in the nature of an agreement between them, or the understanding between them.

"It is true that, after using it, they might make an express agreement that it should be treated as hers, and in that case it would be proper to allow it; in other words, it is necessary to have it appear here that the parties treated this money that was loaned to Tinkham as the widow's money; and, if she made an arrangement or had an understanding with him by which he borrowed from her five thousand dollars of the money of the estate, it might perhaps be concluded that it was her money, or so understood between them. It will depend upon the evidence that throws light upon what their mutual understanding was. If the understanding was that he was to loan money of the estate, he had no right to have any such understanding; but if they treated it as an advancement to her, and a loan by her to him, it is enough."

And said jury, being again recalled, was further instructed by said court as follows:

"I thought best to send for you, gentlemen, to give you a little further instruction. It has been given before, but it should perhaps be repeated. That is this: That the duty of a man who acts in the capacity of an administrator is that of a trustee. He is a person in whom confidence is reposed, and he must not be guilty of a breach of faith. And if you

find that an arrangement of this kind, or recognition such as was mentioned, and not an express agreement made before the loaning, was only reason for charging this to the widow, then I instruct you that it must also appear, before that can be done, that there was no breach of faith upon his part,— no fraudulent concealment of facts which she ought to know about the transaction; in other words, if through any fault of his, or any misrepresentation or fraudulent concealment— improper concealment—of facts, she permitted this thing, that it would make a difference, and should not be allowed. I think, perhaps, that is all I should say about that."

The charge laid down the law correctly, under the facts and circumstances of this case; and we think, after a careful perusal of the testimony, the verdict or finding of the jury was fully justified by the evidence.

While the administrator alone appeals, it is quite clear that the contest is made in behalf of the sureties upon the administrator's bond. We quote from appellant's brief:

"The case was tried largely upon the theory that Mrs. Fulton, the widow of deceased, had so dealt with the assets of the estate, and with the administration in reference thereto, that she should be bound by these dealings; and, if losses were to happen, then she, rather than the sureties, should stand them, in all cases where she had been in any way instrumental in bringing them about. It was not contended that she might not have claims against the administrator, but it was insisted that the account should be so settled that the *rights of the sureties* as well as others should be protected."

And counsel claims that the case should be determined upon equitable principles. We can perceive no difficulty in the case. It makes no difference whether we call the principles legal or equitable which should govern the rights of these parties; the liability of the sureties is co-extensive with the liability of the principal in the bond, and can be extended no further than his. And there is no reason why they should be any less than his would be upon his bond. Any dealings with the principal which would change or increase their liability will operate to discharge them. But sureties must

understand that an administrator's bond means something, and that they must be held to the faithful execution of the trust assumed by the administrator.    The question which arises in the settlement of the final account of an administrator involves his official acts in collecting, controlling, and management of the estate, the disposition of the proceeds, and the balance on hand belonging to the estate awaiting distribution.    This balance cannot be one amount in favor of distributees, and another in favor of the sureties in the bond.

The order of the circuit court is affirmed, with costs, and it will be certified to the probate court.

The other Justices concurred.