PEARSON *v.* GILLENWATERS.

(*Knoxville.* September 25, 1897.)

1. ADMINISTRATION. *Not devastavit to delay sale of bank stock.*

An administrator who, in good faith and upon reasonable grounds, postpones the sale of bank stocks, will not be held liable for loss to the estate resulting from the subsequent depreciation of such stocks in consequence of events he could not forsee or control. He is permitted a discretion in fixing the time, place, and terms of selling stocks which is not allowable as to perishable property. Prejudicial haste and dangerous delay are alike to be avoided in sales of stocks. (*Post, pp. 451–453.*)

Cases cited and approved: Deitz *v.* Mitchell, 12 Heis., 676; Mickle *v.* Brown, 4 Bax., 468; Cator ex parte, 14 Lea, 408; Perry *v.* Wooten, 5 Hum., 524; James *v.* Wingo, 7 Lea, 148; 103 Mass., 170; 32 N. W. Rep., 901.

2. SAME. *Same.*

An administrator who delays the sale of bank stocks at the instance or request of the parties beneficially interested, will not be held liable to such interested parties for loss resulting to the estate from such delay by reason of subsequent depreciation of such stocks. (*Post, p. 453.*)

Cases cited and approved: Perry *v.* Wooten, 5 Hum., 524; 103 Mass., 176; 32 N. W. Rep., 901.

3. SAME. *Advice of counsel protects administrator, when.*

That an administrator acted in accordance with the advice of counsel affords him protection within proper limits, especially where the advice was given as to the advisability of bringing or defending suits. (*Post, pp. 453, 454.*)

Case cited and approved: James *v.* Wingo, 7 Lea, 148.

4. SAME. *Sale of land to pay debts proper, when.*

Sale of land to pay debts will be decreed where valid debts, in excess of the amount of personal assets, are shown, and the administrator has not wasted assets of the estate. It is not

necessary, in such case, to await the actual application of the personal assets before ordering sale of the lands. (*Post, pp.* *454, 455.*)

Case cited and approved: Doherty *v.* Choate, 16 Lea, 192.

5. SAME. *Purchaser not entitled to receiver of rents pending appeal.*

The purchaser of land at judicial sale made for payment of a decedent's debts is not entitled to have a receiver of the rents and profits appointed, pending an appeal by the devisee from the decree confirming the sale. The purchaser takes rents only from date of final confirmation of sale by the appellate Court. (*Post, pp. 455-457.*)

Cases cited and approved: Morford *v.* Hamner, 3 Bax., 391; Richmond *v.* Yates, 3 Bax., 204; Davis *v.* Reaves, 2 Lea, 649; Pickens *v.* Reed, 1 Swan, 80; Armstrong *v.* McClure, 4 Heis., 80; Ellis *v.* Foster, 7 Heis., 131; Shields *v.* Thompson, 4 Bax., 227; Latta *v.* Pierce, 11 Lea, 267.

6. SAME. *Devise for future services yields to rights of creditors.*

A guardian for a minor appointed by a will giving to the latter specified land, in consideration of his future service as guardian, cannot set up his claim to the land under the will, in opposition to the equities and rights of creditors of the estate and to necessary expenses of administration. (*Post, pp. 457-459.*)

7. SUPREME COURT. *Effect of concurrent finding of Master and Chancellor.*

The concurrence of the Master and Chancellor as to the compensation due to an administrator for his service, is not such a question of fact as is embraced in the rule giving such concurrence on a question of fact the weight of the verdict of a jury, as such determination is only an expression of opinion or an estimate. (*Post, p. 459.*)

Case cited and overruled: Hicks *v.* Porter, 90 Tenn., 13.

8. SAME. *Reviews finding of Court of Chancery Appeals, when.*

An estimate as to amount of compensation due an administrator for his services, is not such finding of fact by the Court of Chancery Appeals as is conclusive upon this Court, and the same will be reviewed by the Court upon proper exception. (*Post, pp. 459, 460.*)

9. SAME. *Exception below sufficient, when.*

An exception in the lower Court, that no compensation should

have been allowed an administrator, is sufficient basis for an exception in this Court to such compensation as is excessive in amount. (*Post, pp. 460, 461.*)

---

FROM HAWKINS.

---

Appeal from Chancery Court of Hawkins County. A. T. Bowen, Ch.

J. O. Phillips and Shields & Mountcastle for Pearson.

Gillenwaters & Son, Jarvis & Armstrong, and Huffmaster & Chestnut for Gillenwaters.

Wilkes, J. This is a bill by the complainant, as administrator with the will annexed of Mrs. S. W. Burem, to pass his accounts and to sell land of which the testatrix died seized, for the payment of debts against her estate and the costs of administration. The defendant, J. U. Gillenwaters, is the residuary legatee and devisee, and the party mainly interested in the estate. The interest of the other parties will appear hereafter.

The Court of Chancery Appeals has heard the cause, and it is now before us on appeal by all the principal parties from such portions of the decree of the Court of Chancery Appeals as affect them.

The facts as found are, that Mrs. Burem died

owning $10,000 of stock in the Rogersville National
Bank of Tennessee, upon which it was claimed she
was then owing $2,500 to the bank. She also owned
other personal property of small value, and some
lands, the aggregate value of her estate being about
$20,000. There were some small unquestioned debts
against the estate besides the $2,500 referred to, and
there were claims which were then disputed, and
afterwards litigated. She gave, by her will, sundry
small legacies to her relatives, and a small amount
to her Church. She devised a tract of land to de-
fendant, Jno. B. Charles, and the residue of her
property to her adopted son, the defendant, J. U.
Gillenwaters. The residue was then understood to
consist of several tracts of land, some personal prop-
erty, and the bank stock referred to, subject to a
small amount of debts. She appointed Jno. B.
Charles testamentary guardian of her adopted son,
the defendant, and devised him a tract of 190 acres
of land in consideration of the services to be per-
formed by him as such guardian, and she gave
special directions as to how he should raise and edu-
cate the ward. Mr. Charles was also appointed ex-
ecutor, and qualified, but ascertaining that he could
not properly fill both offices at the same time, in a
few days he resigned as executor and qualified as
guardian or trustee under the will. Complainant
Pearson, thereupon qualified as administrator with
the will annexed. The bank stock remained in the
hands of the guardian, Charles, but was held subject

15 P—29

to the orders of the administrator, Pearson, and in the year 1889, he received upon it a dividend of ten per cent., and in 1890 another of eight per cent. This, with the cash realized from sales of property, was sufficient to pay all the debts recognized as valid, the debt of $2,500 to the bank being disputed, and afterwards resisted and litigated.

An effort was made to sell $1,000 of the bank stock, to realize money to educate the ward, but it could not then be sold at over ninety cents on the dollar, and it was deemed advisable by the administrator, and also the guardian, to hold it, as well as the balance of the bank stock, without sale.

On April 8, 1890, suit was brought against the estate and administrator by one Lucy McMahon for about $1,100, claimed to be owing for personal services rendered the testatrix in her lifetime, and, in April, 1890, a similar suit was brought against the estate, for similar services, for $2,500 by Gaylord and wife. On September 19, 1891, the bank brought suit on the $2,500 note. Judgments were rendered for Mrs. McMahon for $1,150, and Mrs. Gaylord for $2,000, and, some time afterward, in favor of the bank on its note.

When the McMahon judgment was obtained, the administrator attempted to sell the bank stock, and advertised it, but could find no bidders. Gaylord and wife levied on it, and the administrator enjoined them from selling. Under the decrees in that injunction suit, the stock was ordered by the Court

to be sold, and it was reported as sold at thirty-three to thirty-four cents, but on the exception of the guardian *ad litem*, supported by affidavit from the cashier of the bank that it was worth $1.10, the sale was not confirmed. It was again offered, and sold at forty-five cents. There appears to have been no open market for the stock, but the statements of the bank showed that it was intrinsically worth $1.10, and some private sales were made at about this price in 1890 and 1891. The proof fails to show that it could have been sold in open market at public sale at a fair price at any time after the McMahon judgment was recovered. Previous to that time it was thought desirable to hold it as a safe investment for the ward, both by the administrator and guardian and by the ward, and they were advised to this course by their counsel, and were also advised by him to litigate the bank and other claims, so that, between October 12, 1889, the date the administrator qualified, and September 29, 1891, when the McMahon judgment was rendered, it was not deemed advisable to sell the stock, nor necessary for the payment of debts, and no attempts to make such sale were made, except, as before stated, there was an effort to sell $1,000 of it.

The Court of Chancery Appeals find that, beyond any sort of controversy, the administrator acted in the most perfect good faith and without a suspicion of profit or benefit to himself, and that he was all the while actuated by upright motives and a sincere

desire to properly discharge his duties; that he acted under the advice of counsel, and the litigation engaged in, while not successful, was not merely captious or idle, but necessary, and that the final outcome of the estate was not chargeable to improper administration; that the bank stock was bought in "boom times," and could not afterwards be sold on account of the stringency in financial circles. Under these circumstances the Court of Chancery Appeals was of opinion the administrator should not be charged with the full amount of the bank stock, citing *Deitz* v. *Mitchell*, 12 Heis., 676, 679; *Mickle* v. *Brown*, 4 Bax., 468, 475; *Matter of Cato ex parte*, 14 Lea, 408, 417; 7 Am. & Eng. Enc. L., 347, 359; *Perry* v. *Wooten*, 5 Hum., 524; *Poole* v. *Munday*, 103 Mass., 170, 177; *Ward* v. *Tinkham*, 32 N. W. Rep., 901; *James* v. *Wingo*, 7 Lea, 148.

In Schouler on Execution, Sec. 322, it is said, in substance, that when no immediate application can be made of the funds, the personal representative is permitted and encouraged to permit quick assets, which are productive to stand for a time uncollected (Pritchard on Wills, Sec. 696); and the same diligence is not exacted in personal representatives in converting into money bank stock and other securities of this kind, as in regard to other classes of personal property, especially when there is no immediate demand for the money, and the stock is yielding an income. The time, place, and terms of sale are left, to some extent, to the discretion of the

personal representative, and all that the law expects
or requires is that, in view of the kind of property
to be sold, its quality and value, the financial con-
dition of the community· and the exigencies of the
estate, and other considerations which would influence
a reasonably prudent man acting in his own affairs,
the representative shall select such time, place, and
terms as promise the best results to the estate.
Prejudicial haste and dangerous delay are alike to be
avoided.     Bank stock and perishable property are
not on the same footing, and should not be so
treated; and, if the sale is postponed for reasons
rendering it improper to sell earlier, and the prop-
erty is lost by events which the representative could
not foresee or control, he will not be held liable
when he acts in good faith.    Pritchard on Wills,
Sec. 703; *Mickle* v. *Brown*, 4 Bax., 468; Pomeroy's
Equity Juris., Sec. 1070.

So, also, if the representative delay at the re-
quest or instance of the· parties beneficially interested,
or under their advice, and, in consequence, a loss
is sustained, the representative cannot, by such inter-
ested party, be charged with such loss.     *Perry* v.
*Wooten*, 5 Heis., 524; *Poole* v. *Munday*, 103 Mass.,
176; 7 Am. & · Eng. Enc. L., 359; *Ward* v. *Tink-
ham*, 32 N. W. Rep., 901.   And so, when the ad-
ministrator or executor acts in accordance with the
advice of counsel, it should be, within proper limits,
a protection to him.   *James* v. *Wingo*, 7 Lea, 148.
And especially is this so when the advice is given

as to the advisability of bringing suits, and defending against suits or claims.   It is the duty of the representative in such cases to seek counsel, and to be influenced, and, within reasonable limits, to be controlled by it.

It is urged that the administrator compromised the McMahon suit at one time for $25, but the Court of Chancery Appeals, on a review of the evidence, find this not to be a fact.

We are content with the holding of the Court of Chancery Appeals as to the liability of the administrator under the facts as they are found, and do not regard him as guilty of devastavit or improper execution of his trust.

It is next insisted that under the facts presented in the record, the administrator was not entitled to have the real estate sold to pay debts; that the personal assets having been wasted, he should be held guilty of devastavit, and required to pay these debts rather than charge them on the lands.   The existence of valid debts being shown, beyond the amount of personal assets, a sale of land is proper when the administrator has not wasted the assets of the estate.   When such deficiency of assets exists, it is not necessary to wait until they are actually applied before the land can be sold.   *Doherty* v. *Choate*, 16 Lea, 192–200.   Having found the question of devastavit in favor of the administrator, and there being debts of the estate to be paid, and no suffi-

ciency of assets to pay them, a sale of the land was authorized and proper.

It appears that on a sale of this land in the Court below, T. C. Miller became the purchaser of 400 acres of it, and it was confirmed to him on July 31, 1897, in the Court below. The same day he asked that a receiver be appointed, alleging that defendant, Gillenwaters, was in possession, and had been since the testator's death, and was receiving and using the rents and profits; that there were crops of wheat, corn, oats, and grass on the land; that the wheat raised by tenants was then about ready to be delivered to Gillenwaters, as the landlord; that the crops were planted and grown after the bill was filed, and he had been advised would pass to him under his purchase, and this advice caused him to bid more for the land than he otherwise would; that they were not reserved in the sale; that Gillenwaters was insolvent, and had declared his intention to appeal the cause, in order to secure the crops and rents and profits for the year, and, in the event of such appeal, the said rents, crops, and profits would go into the hands of defendant, Gillenwaters, and be lost. To this petition, defendant, Gillenwaters, demurred, on the ground that until the sale was confirmed in the Supreme Court, the purchaser would get no title, and be entitled to no possession. This was overruled. The Chancellor granted the petition so far as it related to all crops and rents, except such as had been collected on or

prior to July 3, 1897, and put Miller in possession as receiver. Gillenwaters appealed under the pauper oath.

The Court of Chancery Appeals held that the action of the Chancellor in appointing the receiver was improper; that the case was similar to that of a vendor seeking to enforce his lien, in which case he may subject the land, but not the rents, except in certain cases. Citing *Morford* v. *Hamner*, 3 Bax., 391, and also similar to a case of controverted or disputed title to land, in which case the Court will not, as against the party in possession, appoint a receiver. Citing *Richmond* v. *Yates*, 3 Bax., 204; *Davis* v. *Reaves*, 2 Lea, 649. That Court accordingly held that Miller would not be entitled to the rents and crops, and from this part of the decree of the Court of Chancery Appeals, Miller appeals to this Court, and assigns error.

We are of opinion the holding of the Court of Chancery Appeals is correct in its results upon this feature of the case. A purchase of land under judicial sale is entitled to the possession of it on the confirmation of the sale, if there be nothing in the terms or decree of sale providing otherwise. *Pickens* v. *Reed*, 1 Swan, 80; *Armstrong* v. *McLure*, 4 Heis., 80; *Ellis* v. *Foster*, 7 Heis., 131; *Shields* v. *Thompson*, 4 Bax., 227; *Latta* v. *Pierce*, 11 Lea, 267. The confirmation, however, has no retroactive effect, so as to relate back to the date of sale and give the purchaser the itermediate rents. *Armstrong* v. *McLure*, 4 Heis., 80.

In the present case the defendant, Gillenwaters, was contesting the right of the Court to sell the land devised to him. The Court, however, ordered and made the sale, and Miller was the best bidder for the land, and if the sale had been finally confirmed in the Court below to him, he would have been at that time entitled to the possession. While it was confirmed, still the appeal of the defendant, Gillenwaters, had the effect to set aside this confirmation, as well as all other decrees, until his appeal could be heard. Pending this appeal, which was, among other things, to test the right to sell his land, he had a right to remain in possession, and to receive the rents, and the subsequent dismissal of his appeal would not deprive him of the intermediate profits. This being so, it was improper to impound these rents and profits and crops, and put them into the hands of a receiver, and the decree of the Court of Chancery Appeals upon this point is correct, and is affirmed.

Jno. B. Charles also appealed to this Court from the decree of the Court of Chancery Appeals, and assigns as errors that the land devised to him by the testatrix has been improperly sold to pay debts of the estate and costs of administration. His contention is, that this land was given to him in consideration of his services as guardian for the minor, Gillenwaters, and he is not, therefore, a mere voluntary grantor, but stands in the attitude of one who has paid value for his lands. This tract of

land contains 190 acres, and was valued at $3,000 by the testatrix.

The said Jno. B. Charles qualified as guardian in 1889, when the estate was believed to be not only solvent, but sufficient to pay all the legacies and satisfy all the devises in the will, and he went into possession of the land devised to him, and has had it ever since. He gave bond as guardian in the sum of $30,000, and claims that his services were worth the real value of the farm, which sold for $1,710. His contention is, that his services are as much entitled to be compensated for as are the solicitors, administrator, witnesses, and officers whose services have been used in the execution of the will and settlement of the estate, and that his services were recognized by the testatrix as valuable, and the amount of compensation to be paid for them was fixed by her. The Chancellor decreed a sale of the land devised to him, but directed that any surplus remaining from the sale of the lands devised to Gillenwaters and Charles, after payment of debts, expenses, etc., should be paid to Charles, to the extent of $1,710, and the Court of Chancery Appeals affirmed the decree of the Chancellor to this extent, and refused to exempt the lands devised to Charles from sale, as he insists should be done. The Court of Chancery Appeals, however, directs the decree to be so drawn as to save to the defendant, Gillenwaters, the right to call said Charles to account for his guardianship if he shall so desire.

We are of opinion there is no error in the hold-
ing of the Court of Chancery Appeals as to the
rights of Mr. Charles. He was to take the lands,
it is true, as consideration for his services as guard-
ian, and to that extent and in that sense he was
a purchaser for value. Still, he was to take it
under the will and as derived from the estate, and
he cannot set up his claim to the land under the
will in opposition to the superior equities and rights
of the creditors of the estate. These creditors and
the expenses of administration must be paid before
the legatees and devisees are entitled to receive un-
der the provisions of the will.

It is objected that the Court of Chancery Ap-
peals reduced the allowance of the administrator from
$650, as fixed by the Chancellor, to $300, and from
this part of the decree of the Court of Chancery
Appeals the administrator prays an appeal. His in-
sistence is that, upon a reference, the Clerk and
Master fixed this fee at $650, and the Chancellor
concurred in the report and estimate, and this, it is
insisted, has the force and effect of a verdict of a
jury, and should have been so treated by the Court
of Chancery Appeals. The concurrence of the Mas-
ter and Chancellor as to the compensation due to
an administrator for his services, and to an attorney
for his fees, or a receiver or other trustee for his
services, is not such a concurrence upon a question
of fact as is embraced in the rule giving such con-
currence the weight and effect of a finding by a jury.

At most it is on the part of the Clerk and Master and the Chancellor but an expression of opinion or an estimate; and, while their estimates are entitled to weight because they are familiar with such fees and allowances as a rule, and with the services rendered in the particular case, still, their concurrence does not have the effect as contended, and the Court of Chancery Appeals was authorized to put its estimate upon the allowance independent of that of the Chancellor and Master, and likewise this Court can review the estimate of the Court of Chancery Appeals, because it is not a fact found by that Court, but their judgment and estimate upon the facts and upon the record.

It is true, in the case of *Hicks* v. *Porter*, 6 Pick., 13, the rule is suggested in the opinion of the special Judge delivering it as contended for, but in that case the fees of the guardian *ad litem* were fixed at an amount satisfactory to the Court, and for this reason was affirmed, and the statement that the rule of concurrent finding applied in such cases, by the learned special Judge escaped correction by the Court, which agreed in the result in that case, without reference to the rule, and it was inadvertent, and has not been since followed, and is not correct.

When the matter was in the Chancery Court there was no exception, in express terms, made to the amount allowed, the exception being that nothing should be allowed, in view of the devastavit and waste committed by the administrator, and, again, if any-

Pearson *v.* Gillenwaters.

thing was allowed, it should be charged up against the defendant, Charles, and not taken out of the estate. We think the exception that nothing should be allowed, embraces the feature presented; that the amount allowed is excessive, and this error is not, therefore, well assigned, but we are content with the amount fixed by the Court of Chancery Appeals, in view of all the facts and circumstances in the case. There are other matters of minor importance involved in the cause, but those already disposed of are the principal ones. We are entirely content with the disposition made of the others, and with the result reached by the Court of Chancery Appeals, and their decree is affirmed, and the costs will be paid as they have directed.