McAdoo *v.* Dickson *et al.*[*]

(*Nashville*, December Term, 1939.)

Opinion filed February 17, 1940.

---

*This case reprinted and annotated in 126 A. L. R. 1345.

JAMES W. WILSON, of Gallatin, and JOSEPH H. NOR-VILLE, of Memphis, for complainant.

CANADA & RUSSELL and GILLILAND & GILLILAND, all of Memphis, for defendants.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This bill was filed in April, 1939, by McAdoo, as executor of the estate of Dr. E. C. Freas, seeking to subject certain personal property which Dr. Freas had on deposit before his death in a locked box in the Union Planters National Bank & Trust Company to the satisfaction of certain claims for taxes and, chiefly, for counsel fees and costs incurred in previous litigation over the right and title in and to the personal assets mentioned. This controversy has been before this Court on applications for writs of *certiorari* from the Court of Appeals on two former appeals in which the contest over this property was involved, *McAdoo* v. *Dickson,* 23 Tenn. App., 74, 126 S. W. (2d), 393. The bill in this case sets out at great length the history of that litigation, but a very

brief summary only is necessary for the purposes of this opinion.

It appeared in that litigation and is brought out in the bill in this case (the records in the former litigation are made part hereof and may be looked to in this case) that Dr. Freas died in a hospital in Memphis, and that just before his death he executed an instrument in which he named Mrs. Jessie Dickson as his "deputy and agent," authorizing her to have access to his safety deposit box and remove the contents; that she did take this property, consisting of bonds, stocks, notes, etc., out of the box and to the hospital where Dr. Freas was, and she made claim to the property as a gift *causa mortis* from Dr. Freas.

After the death of Dr. Freas, a will was found naming complainant herein as executor and bequeathing to complainant and his half brother and half sister all of his property; that he thereupon qualified as executor, and found that the assets of the estate were of nominal value, unless the personal assets in this deposit box formed a part thereof; that being advised that the claim of Mrs. Dickson was not well founded and that it was his duty as executor to contest the claim, he instituted in the chancery court at Memphis suit to recover this property for the estate; that this contest was protracted, and the bill proceeds to give a history of it, showing that the case was carried to the Court of Appeals twice, 23 Tenn. App., 74, 126 S. W. (2d), 393, and writs twice denied in this Court, with the final result that Mrs. Dickson was successful in maintaining her claim. It was alleged that the complainant, acting as executor, incurred large expenses, including attorney's fees, court costs, etc., in prosecuting this claim, the amount of which is stated to approximate six thousand dollars. Complainant alleges

that he acted in good faith and upon reasonable grounds and for the benefit of the estate; that the estate, independent of the assets given to Mrs. Dickson, had realized approximately six hundred dollars only, and that this was far from adequate to meet the expenses of administration and particularly the expenses above mentioned.

Complainant also set up that the value of the personal assets received by Mrs. Dickson was approximately ten thousand dollars, and that this sum was subject to an inheritance tax, which complainant estimated at five hundred dollars; that he as executor of the estate was liable for this tax, and that he was entitled to have the property impounded and subjected to a lien for the satisfaction of this tax and for payment of the expenses to which reference has heretofore been made.

The bill prayed for a judgment against Mrs. Dickson for possession of this property, and made the Union Planters Bank a party defendant upon the allegation that the property was still in a deposit box of that bank.

The chancellor sustained a demurrer to the bill interposed by the bank and a motion to dismiss filed by Mrs. Dickson, and from his decree dismissing the bill complainant has appealed.

The gist of the motion to dismiss for want of equity on the face of the bill was that, to quote from the motion:

"There is no rule of law or equity which would permit complainant to hold the defendants personally liable for and to subject the property of the defendant, Mrs. Dickson, to the payment of court costs and attorneys' fees incurred by complainant in wrongfully bringing a suit against the defendants, in which said suit it was adjudged that complainant had no title to or right to possession of said property and especially since it appears affirmatively from the bill and exhibits thereto that there were

no debts owed by the decedent at the time of his death, and consequently there were no creditors to complain of the gift causa mortis made by Dr. Freas to the defendant, Mrs. Dickson.''

Very elaborate and exhaustive briefs have been filed, but learned counsel for appellant frankly concedes that there is no like case anywhere to be found reported in this or any other jurisdiction. He is therefore confessedly without any direct authority for the contention which the bill presents and which is made on behalf of the appellant in this Court.

 The general rule is of course well settled that counsel fees expended in good faith by a personal representative for the purpose of benefiting or protecting the estate are to be allowed. *Johnson* v. *Tomlinson,* 1 Shannon Cas., 396; *Cannon* v. *Apperson,* 82 Tenn. (14 Lea), 553; *Bowden* v. *Higgs,* 77 Tenn. (9 Lea), 343. But we have no case, nor are we cited to any authority which seems to recognize the right to exact payment of such allowances out of assets which did not pass to the personal representative and which were not assets of the deceased at the time of his death.

 It has been finally and definitely adjudicated that the assets sought to be reached by this bill passed to Mrs. Dickson as a gift *causa mortis* and we are constrained to agree with counsel for the appellee in the statement that ''it is a fundamental principle of law that where a gift *causa mortis* is made, the property given passes direct from the donor, never becomes a part of the estate, is not subject to probate, is taken against the personal representative, and not from him.'' And we are constrained to further agree that the result necessarily is that such a gift is ''subject to none of the incidents or expenses of administration of the estate.'' Pritchard

on Wills, section 479; 12th R. C. L., page 958 and 969; 28 C. J., page 699; and see our own case of *Gass* v. *Simpson,* 44 Tenn. (4 Cold.), 288.

Counsel for appellant quote from Sholder on Wills, etc., vol. 3, section 1923, page 1937, but this authority seems to us to support the view hereinbefore indicated rather than that contended for by the appellant. We quote as follows:

"A gift of personal property causa mortis, which differs from ordinary gifts in being made with an anticipation of death, and constituting a sort of ambulatory disposition by delivery, without the essential formalities of a will, carries two distinct consequences when fully executed and followed by the donor's death; one with respect to the donee himself, the other as concerns the creditors of the estate. As concerns the donee, his title is derived directly from the donor, and not from the donor's executor or administrator; consequently, the assent of such representative after the donor's death is not in any way essential to the donee's title, *nor has the executor or administrator any claim whatever upon the property for the ordinary purposes of administration and the claims of distributees.*"

Attention is directed to the language which we have italicized in the foregoing quotation.

Counsel for appellant also refer to two other of our recent cases, *Hutchison* v. *Montgomery,* 172 Tenn., 375, 112 S. W. (2d), 827, and *Young* v. *Phillips,* 170 Tenn., 169, 93 S. W. (2d), 634, 104 A. L. R., 975. Neither of these cases is in point. The Hutchison case was a suit to compel the defendants to contribute toward an inheritance tax paid by the administrator out of the assets of the estate in his hands. The question dealt with and the facts before the Court were wholly different from

those here appearing. In *Young* v. *Phillips, supra,* while this Court modified the decree below so as to allow the executor credit for disbursement, the action of the chancellor and the Court of Appeals in refusing to allow counsel fees for services rendered in connection with the administration was affirmed. In neither case was it sought to subject a gift *causa mortis.*

█ Counsel for appellee refer to *Hancock* v. *Fidelity Mutual Life Ins. Co.,* Tenn. Ch., 53 S. W., 181, affirmed by this Court[1] in February, 1899, as the only Tennessee case which seems to be on its facts at all analogous. That case involved litigation over the right to the proceeds of an insurance policy claimed on the one hand by the mother of the intestate, and on the other by his creditors. In the course of the proceeding, an administrator *ad litem* was appointed to defend the alleged rights of the creditors in this fund. The Court denied the claim of the creditors and left the fund with the mother. The chancellor refused to allow the administrator *ad litem* and his solicitors compensation out of this fund. The appellate court affirmed this ruling and said: "Such fees could only be allowed for the protection of the estate, *out of assets belonging to the estate.* An administrator cannot incur or be allowed debts and expenses in excess of the assets belonging to the estate." The italics are ours, and the italicized language appears to deal directly with the principle involved in the instant case. The court went on to say that only a reasonable amount could be allowed when found to be necessary and proper, and cites for this proposition *Porterfield* v. *Taliaferro,* 77 Tenn. (9 Lea), 242, 245; *Loague* v. *Brennan,* 86 Tenn., 634, 9 S. W., 693. The opinion in the Hancock case concludes with this

---

[1]No opinion for publication.

very pertinent paragraph [53 S. W., 182]: "Our decision is that the proceeds of this policy were the property of the complainant, and we know of no principle of law which would authorize the courts to take her property to pay counsel or others for an attempt to deprive her of it." Paraphrasing and applying this statement to the instant case, it may be said that prior decisions of this court have adjudicated that the assets involved were the property of the defendant, and we know of no principle of law which would authorize the courts to take her property to pay complainant or his counsel for an attempt to deprive her of it.

In *Williams* v. *Thornton,* 160 Tenn., 229, 22 S. W. (2d), 1041, 1042, there was a contest over the proceeds of a certain note between an executor and certain beneficiaries under a will, which was determined in favor of the beneficiaries, and, while the precise question here involved was only incidentally touched upon in the opinion, it appears that the executor, following this litigation, sought to have an allowance for counsel employed by him in his capacity as executors. The court denied this allowance to the executor. That was a case in which the executor was himself the party to whom the proceeds of the contested assets would have gone in case of a recovery by the executor of the fund. The court remarked that "The only need for counsel was by Thornton individually to aid him in his effort to establish his individual right to the proceeds of the note. The estate cannot be charged with this expense." In the instant case, it appears that the sole legatees under the will were the executor, complainant herein, and his half brother and sister; that there are no creditors, so that the real beneficiary of a successful litigation by the executor in this matter would be these parties. It may well

be doubted whether this situation would in any case justify an allowance to the counsel representing the executor in a losing effort to recover for the estate a disputed fund.

It may be said in conclusion that the record shows that there are no creditors whose interests are in anywise involved, or who have been deprived of rights which creditors would have as against a gift *causa mortis*.

■ The bill does not show that any inheritance taxes have been assessed against, claimed from, or paid by the executor on account of the fund involved. This claim is therefore premature, and we think it fair to assume that no claim would be asserted by the state against an executor for inheritance taxes on account of property which never came into his possession and which in no sense could be said to have passed to him as a part of the estate of a deceased person. Our statute, Chapter 29, Acts of Extra Session, 1929, Section 5, subsection 5 (Code Section 1292), appears to limit the liability of executors for the estate taxes to the amount of assets actually received by them. However, it is not hereby intended to preclude the executor from recourse to the funds in question should liability he hereafter adjudged against him for taxes thereon.

On the whole case, we are constrained to affirm the decree of the chancellor in dismissing the bill.