In re ESTATE OF Florence Gertrude WALLACE, Deceased.

James D. WALLACE, Jr. and Steven F. Wallace, Plaintiffs/Appellants,

v.

Jewel B. COLLIER, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 15, 1992.

Order Taxing Costs March 25, 1992.

Published in Accordance with Tenn.Ct.App.R. 11.

Edmund W. Archer, Thomas & Archer, Nashville, for plaintiffs/appellants.

H. Michael Bennett, Schulman, LeRoy & Bennett, Nashville, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal involves a dispute over the fees incident to the administration of a relatively uncomplicated $136,000 estate. The residuary beneficiaries filed objections in the Davidson County Probate Court after the executrix and the attorney and accountant assisting her sought approval for approximately $42,000 in fees. The probate court referred the fee issues to a special master who, following a hearing, recommended approximately $32,500 in fees. The probate court confirmed the master's report and awarded an additional $5,386 to the executrix's attorneys for services rendered in defense of the fee claim. The beneficiaries have appealed, insisting that the fees recommended by the master and approved by the probate court were still excessive and unreasonable. We agree and, therefore, reduce the fees even further.

### I.

Herbert and Florence Gertrude Wallace were an elderly couple who lived in Nashville. Mr. Wallace had operated a rug cleaning business for many years but in 1980 was suffering from Alzheimer's disease. They lived adjacent to Mr. Wallace's business with one of Mrs. Wallace's elderly sisters. Mrs. Wallace was unable to care for her husband, and their only other immediate relatives, two grandchildren living in Seattle and Mrs. Wallace's two sisters, were unable to be of much day-to-day assistance.

Since the Wallaces had no local family support, a friend introduced them to Jewel B. Collier. Mrs. Collier, a local bookkeeper who had been laid off from her job several years earlier, agreed to become employed as the couple's "caretaker." In return for a fee of $10 per hour, Mrs. Collier maintained the Wallaces' bank accounts and investments, ran errands, and served as their confidant and chauffeur.

Mr. Wallace died in December, 1985. His will established two trusts and left the bulk of his estate to Mrs. Wallace. After the bank named as executor and trustee in Mr. Wallace's will declined to serve, Mrs. Collier agreed, at Mrs. Wallace's request, to serve as both trustee and executrix. Mrs. Collier was assisted by the law firm and the accountant who had assisted the

Wallaces with their business and personal matters for many years.

Mrs. Wallace executed her own will in October, 1986. She made specific bequests of cash and items of personal property to various relatives and to Mrs. Collier whom she referred to as her "most loyal and trusted friend." She left the remainder of her estate to her two grandchildren, James D. Wallace, Jr. and Steven F. Wallace, and named Mrs. Collier as her trustee[1] and executrix. In February, 1987, Mrs. Wallace executed a codicil altering several of her original bequests and reducing the bequest to Mrs. Collier "for reasons understood between myself and my dear friend."

Mrs. Collier continued to care for Mrs. Wallace until Mrs. Wallace's death in June, 1989. Mrs. Collier made the funeral arrangements and also helped one of Mrs. Wallace's sisters move into Mrs. Wallace's house to console the other surviving sister. Later, Mrs. Collier herself moved into the house in order to guard its contents and to assist Mrs. Wallace's two elderly sisters.

Mrs. Collier filed Mrs. Wallace's will for probate in July, 1989 and set out to administer the estate which had an estimated value of approximately $136,000.[2] In August, 1989, she paid herself $1,798 for the services she provided before Mrs. Wallace's death. She also retained the Wallaces' law firm and accountant to assist her in performing her duties and in preparing and filing the required state and federal tax returns. Mrs. Wallace's grandchildren also hired counsel to protect their interests as the residuary beneficiaries.

In June, 1990, Mrs. Collier sought the probate court's approval of fees for herself and the lawyer and accountant assisting

her for services rendered through May 11, 1990. Mrs. Collier sought $27,727 in fees for her services and those of her husband, $10,993 for her attorneys,[3] and $4,706 for her accountant.[4] The beneficiaries objected to these fees, and the probate court referred these issues to a special master.

The master conducted a hearing in July, 1990 and in August, 1990 filed a report recommending that Mrs. Collier be paid $18,513 for her services as executrix, that Mr. Collier be paid $60, and the law firm assisting Mrs. Collier be paid $10,147, and that the accountant assisting Mrs. Collier be paid $3,765. Mrs. Wallace's grandchildren objected to the master's report on the ground that the fees recommended by the master were still excessive. On September 17, 1990, the probate court confirmed the master's report and later, on October 16, 1990, granted the law firm's motion for an additional $5,386 in fees incurred in defending the grandchildren's objections to the fees and exceptions to the master's report.

## II.

The parties disagree concerning the manner in which this court should review the probate court's order confirming the master's report. Accordingly, before we address the fee issues on their merits, we must take up the question of the appropriate standard of review in cases of this sort.

The parties seeking fees from the estate, apparently relying on Tenn.Code Ann. § 27–1–113 (1980),[5] insist that, in the absence of an error of law, this court must treat the fees issues as conclusively settled because the probate court confirmed the master's report. On the other hand, the

---

1. Mrs. Wallace's will provided that the residue of her estate would be held in trust for her two grandchildren until the youngest grandchild reached the age of twenty-eight. The trusts were never established because both grandchildren were over 28–years–old when Mrs. Wallace died.

2. Mrs. Wallace's taxable estate actually amounted to $414,566. In addition to the $136,135 probate estate, it consisted of an additional $278,431 in cash and real property that had been included in the trust established in Mr. Wallace's will for Mrs. Wallace's benefit.

3. Mrs. Collier had already paid her attorneys $5,454 from the estate.

4. Mrs. Collier had already paid her accountant $3,000 from the estate.

5. Tenn.Code Ann. § 27–1–113 provides, in part, that: "Where there has been a concurrent finding of the master and the chancellor, which under the principles now obtaining is binding on the appellate courts, the Court of Appeals shall not have the right to disturb such finding."

residuary beneficiaries insist that concurrent findings with regard to the fees to be paid to administrators, executors, attorneys, or other professionals assisting with the administration of an estate are not binding on the appellate courts. The beneficiaries are correct.

The appellees correctly point out that the general rule is that concurrent findings by the master and the trial court have the same force and effect as a jury verdict and will generally not be disturbed by the appellate courts. *Schoen v. J.C. Bradford Co.*, 642 S.W.2d 420, 424 (Tenn.Ct.App. 1982); *Black v. Love & Amos Coal Co.*, 30 Tenn.App. 377, 381, 206 S.W.2d 432, 433–34 (1947). However, this general rule is subject to four well-known exceptions. The concurrent finding rule does not apply (1) where the issue should not have been referred to a master, (2) where the findings are based on an error of law, (3) where the findings involve a question of law or a mixed question of law and fact, or (4) where the findings are not supported by substantial and material evidence. *Staggs v. Herff Motor Co.*, 216 Tenn. 113, 125, 390 S.W.2d 245, 251 (1965).

Findings concerning the fees charged by executors, administrators, and other professionals assisting in the administration of an estate involve mixed questions of law and fact and are, therefore, not subject to the concurrent finding rule. Almost a century ago, the Tennessee Supreme Court held:

> The concurrence of the Master and Chancellor as to the compensation due to an administrator for his services, and to an attorney for his fees, or a receiver or other trustee for his services, is not such a concurrence on a question of fact as is embraced in the rule giving such concurrence the weight and effect of a finding by a jury. At most it is on the part of the Clerk and Master and the Chancellor but an expression of opinion or an estimate; and, while their estimates are entitled to weight because they are familiar with such fees and allowances as a rule, and with the services rendered in the particular case, still, their concurrence does not have the effect as contended,

and the Court of Chancery Appeals was authorized to put its estimate upon the allowance independent of the Chancellor and Master, and likewise, this Court can review the estimate of the Court of Chancery Appeals, because it is not a fact found by that Court, but their judgment and estimate upon the facts and upon the record.

*Pearson v. Gillenwaters*, 99 Tenn. 446, 459–60, 42 S.W. 9, 12 (1897). More recently, the Supreme Court has explained the difference in the application of the concurrent finding rule by pointing out that:

> [T]he question of the value of services rendered by an attorney, or receiver, or other trustee, when the facts have been set forth in proper detail as to the actual services rendered, is a matter purely of opinion and estimate, as to which the witnesses testifying, and the Master himself, can have no better basis for a fair opinion, if indeed so good, as the members of an Appellate Court, possessed normally of training and experience which peculiarly fits them to form and to review such an opinion.

*Dale v. Hartman*, 157 Tenn. 60, 65, 6 S.W.2d 319, 321 (1928). *See also* 2 H. Phillips & J. Robinson, *Pritchard on Wills and Administration of Estates* § 841 (4th ed. 1984) ("Pritchard").

The issues involved in this case fit squarely within the *Pearson* and *Dale* rationale. Therefore, the concurrent finding rule need not truncate our review. We will, instead, review the findings of fact in accordance with Tenn.R.App.P. 13(d), *see Estate of Griffith v. Griffith*, 61 Tenn.App. 72, 86, 452 S.W.2d 895, 902 (1969), and will make our own independent determination of the reasonableness of the fees and expenses, giving appropriate deference to the probate court's discretion.

### III.

■ Executors are entitled to reasonable compensation for their services, Tenn.Code Ann. § 30-2-606 (1984) and to payment from the estate for reasonable expenses incurred in good faith for the exclusive and

necessary benefit of the estate. Pritchard § 843. Expenses for legal and accounting services that benefit or protect the estate are among the expenses for which payment is appropriate. *Leaver v. McBride,* 506 S.W.2d 141, 145 (Tenn.1974) (attorney's fees); *McAdoo v. Dickson,* 175 Tenn. 598, 602, 136 S.W.2d 518, 519 (1940) (attorney's fees); *Perlberg v. Jahn,* 773 S.W.2d 925, 927 (Tenn.Ct.App.1989) (accountant's fees).

■ Fees and expenses to be charged against an estate must be reasonable, necessary, and proper. *In re Estate of Cuneo,* 63 Tenn.App. 507, 515, 475 S.W.2d 672, 676 (1971). Tenn.Code Ann. § 30–2–606 does not prescribe an inflexible rule for determining reasonableness. This determination must be made in light of all the relevant circumstances, including the extent of the executor's responsibilities, the nature of the services rendered, the promptness and adequacy of the services, and the value of the benefits conferred. *Carmack v. Fidelity–Bankers Trust Co.,* 180 Tenn. 571, 581, 177 S.W.2d 351, 355 (1944); *Loftis v. Loftis,* 94 Tenn. 232, 241, 28 S.W. 1091, 1093 (1895); *Matlock v. Rice,* 53 Tenn. (6 Heisk.) 33, 38 (1871); Pritchard § 841, at 449.

■ Trial courts have the discretion, in the first instance, to determine whether the requested fees and expenses are reasonable. *Young v. Phillips,* 170 Tenn. 169, 172, 93 S.W.2d 634, 635 (1936); *Estate of Griffith v. Griffith,* 61 Tenn.App. at 86–87, 452 S.W.2d at 902. We will not alter the trial court's decision unless we find that the award exceeds reasonable limits. *Ex parte Parker,* 3 Tenn.Cas. (Shannon) 262, 263 (1881).

A.

The Executrix's Fee

■ Mrs. Collier requested a $25,093 fee for her services to the Wallace estate between June, 1989 and May, 1990. During this period, Mrs. Collier stated that she spent approximately 825 hours, or 110 work days, on estate business, including over 200 hours cleaning the house and packing 273 boxes to prepare for the auction of the contents [6] and 306 hours guarding the house. She charged the estate $10 per hour to guard the house and $40 per hour for her other services.

The master found that the hours Mrs. Collier claimed were "higher than are normally expected for this size estate." She also found that Mrs. Collier had served the estate "competently and diligently" and that the hours claimed were "neither inflated, unnecessary nor unreasonable." However, the master also found that Mrs. Collier's $40 per hour rate was "excessive" and recommended that it be reduced to $30 per hour.

We concur in the master's finding that Mrs. Collier performed her responsibilities diligently and that her claim for a fee accurately reflects the amount of work she actually performed. In addition, we share the master's view that the number of hours claimed is higher than normally expected and that Mrs. Collier's requested hourly rate was excessive. We also find that the reduction in Mrs. Collier's fee recommended by the master does not go far enough to remedy these matters.

Mrs. Collier was earning $10 per hour when she was laid off in 1978. The Wallaces paid her $10 per hour during the nine to ten years she worked for them. Her requested $40 per hour rate was derived from the rate charged by independent, "full charge bookkeepers." However, Mrs. Collier's services as executrix did not involve duties normally associated with bookkeeping. In light of the nature of her work and the testimony of its value, we find that Mrs. Collier should be compensated at the rate of $25 per hour for her services to the estate except for the time spent guarding the house.

Mrs. Collier also requested a fee for spending 306 hours guarding the house between Mrs. Wallace's death and the auction. Even though the house and contents were fully insured, and Mrs. Wallace's two sisters were living in the house, Mrs. Collier believed that it was necessary for her

6. The auction grossed $5,782 and netted $2,837.

to remain in the house to guard against theft and vandalism.

We do not concur with the master's conclusion that it was necessary and reasonable for Mrs. Collier to guard the house or its contents. Mrs. Wallace's two sisters, though elderly, were not bed-ridden and could have summoned help had it been required. Mrs. Collier was in no better position to prevent thefts, burglaries, or vandalism and would have also been required to summon help had the need arisen. Therefore, we have determined that Mrs. Collier is not entitled to a fee for the time she spent guarding the house.

The remainder of Mrs. Collier's services are reasonable and appropriate. Therefore, on remand, the probate court is directed to enter an order awarding her $14,261 for her services to the estate.

### B.

### Mr. Collier's Claim

■ Mrs. Collier also sought approval to pay her husband $2,475 for 247.5 hours he spent "cleaning up" Mrs. Wallace's house, yard, and out-buildings. The master found that Mr. Collier had originally agreed to provide these services without compensation and, accordingly, recommended that Mr. Collier receive only $60 for three hours spent cleaning the gutters.

Mr. Collier volunteered to assist his wife when she became executrix of Mrs. Wallace's estate. Neither he nor Mrs. Collier intended to charge the estate for his services, and in January, 1990, Mrs. Collier's attorney informed the attorney representing the beneficiaries that "Mrs. Collier's husband ... expended slightly less than 250 hours of this own time assisting in clean-up, etc. for which no claim shall be made." However, when Mrs. Collier filed her claim for fees five months later, she included a claim for her husband's services because her son, a certified public accountant, had told her that failing to submit a claim would be "absurd."

Mr. Collier did not keep record of his time or of the nature of the work he performed. When he rendered his services, he was under the impression that he was helping his wife and that he would not be paid. Accordingly, we find that Mr. Collier is entitled to no compensation for his services.

### C.

### The Accountant's Fees

■ Mrs. Collier hired the same accountant to assist with the preparation of the federal and state tax returns who had assisted the Wallaces for many years with their business and personal affairs. However, as was made evident in his testimony, the accountant did not have much experience preparing estate tax returns. He filed several amended and corrected documents based on comments and suggestions received from the beneficiaries' attorney.

The accountant's original fee was $3,000; however, it increased to $5,250 after the State decided to audit Mrs. Wallace's estate. He later gave the estate a $543.75 credit. The fee was based on 70 hours of work at the rate of $75 per hour. Included in the 70 hours were 9.5 hours of his secretary's time for which the accountant also charged $75 per hour. Mrs. Collier paid the accountant $3,000 for the estate in March, 1990 before the court approved the fee.

We concur with the master's conclusion that the accountant did not possess the "specialized skills" or "requisite level of expertise" to advise the estate in tax matters. We also concur that the time spent preparing the tax returns was "excessive" and that the accountant's fee should be reduced by 20%. In addition, we find that billing the estate for his secretary's clerical services at the rate of $75 per hour was not reasonable.

The accountant's fee for his own services is reduced by 20%. In addition, the fee for his secretary's services should be based on a $25 per hour rather than $75 per hour rate. On remand, the probate court is directed to enter an order approving the payment of $3,323.75 in accounting fees from estate funds.

### D.

### The Attorney's Fees

As a final matter, the beneficiaries launch a two-pronged attack against the probate court's decision to permit Mrs. Collier to use $15,534 of estate funds to pay her legal expenses. First, they assert that the request for the fees incurred in defending Mrs. Collier's motion for the approval of fees was procedurally defective. Second, they assert that the fees incurred to defend the executor's motion were not for the primary benefit of the estate. We agree on both counts.

### 1.

The law firm representing Mrs. Collier charged $10,993 for its services rendered during the administration of the estate from Mrs. Wallace's death until June, 1990. In December, 1989, Mrs. Collier paid the firm $5,454 in estate funds, apparently without the probate court's approval. In her June, 1990 request for additional fees, Mrs. Collier requested approval to pay the firm another $5,539.

The beneficiaries took issue with these fees, and so the probate court referred the issue to a master along with the other fee issues. The master found that the attorney working on the estate did not possess "the requisite level of expertise required to properly advised [sic] the estate in tax matters" and that "the time expended in preparation of the estate tax form [sic] was excessive." Accordingly, the master recommended that the legal fees associated with the preparation of the tax returns be reduced by 20%.

As soon as the probate court confirmed the master's recommended fee reductions, the law firm, not the executrix, filed another motion seeking an additional $5,387 for approximately 40 hours of work "defending the beneficiaries' objections to the requested fee of the executrix as well as the beneficiaries' exceptions to the Master's report." The beneficiaries opposed the request for additional fees on the ground that the services benefitted the executrix, the accountant, and the law firm, not the estate. The probate court approved the full amount of the requested fees.

### 2.

Executors have the authority to retain counsel to assist them in administering an estate. When they retain counsel, they are personally liable for the fees until a court determines that the services were required and that the fee was reasonable. If a court approves the fee, the executor may charge it back against the estate as one of the costs of administration under Tenn. Code Ann. § 30-2-606. *State ex rel. Dahlberg v. American Sur. Co.*, 173 Tenn. 505, 508-09, 121 S.W.2d 546, 547 (1938); *Perlberg v. Jahn*, 773 S.W.2d at 926-27).

In order for attorney's fees to be allowed as an administrative expense, they must be shown to be required, *see Vaccaro v. Cicalla*, 89 Tenn. 63, 78, 14 S.W. 43, 46-47 (1890), and the services provided must inure to the benefit of the entire estate, *McAdoo v. Dickson*, 175 Tenn. at 602, 136 S.W.2d at 519, as opposed to one or more of the interested parties. *Gilpin v. Burrage*, 188 Tenn. 80, 89, 216 S.W.2d 732, 736 (1948). Thus, in order to use estate funds to pay for the legal fees in this case, we must examine the record to determine whether the services were required and were for the estate's benefit and whether the amount of the requested fee is reasonable.

### 3.

We find that Mrs. Collier was justified in hiring counsel to assist in administering Mrs. Wallace's estate. We also find that the services rendered prior to June, 1990 were primarily for the estate's benefit. However, like the master and the probate court, we find that the hours expended were excessive and that the adequacy of the services was below par.

After reviewing the requested fee for services rendered prior to June, 1990 in light of the factors used by the Tennessee Supreme Court,[7] we have determined that

---

7. *See United Medical Corp. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 136 (Tenn.1986);

the entire fee for these services should be reduced by 20%, not just the portion attributable to the preparation of the tax returns. Accordingly, on remand, the probate court is directed to enter an order directing that $8,795 of the fee for services provided prior to June, 1990 be charged against the estate as an administrative expense.

**4.**

■■■ The law firm's request for additional fees for its defense of Mrs. Collier's original fee request is procedurally defective. It was Mrs. Collier who incurred these expenses, not the estate. The estate cannot be required to pay these fees until the court approves Mrs. Collier's request that the fees be paid from the estate.

Requiring the executor to request that legal fees be paid from the estate is more than a procedural technicality. It recognizes that the executor is, in the first instance, liable for the fees and that the estate is only secondarily liable. It also recognizes that by requesting that the fees be paid from the estate, the executor certifies that the fees were, in the executor's opinion, required and reasonable.

The record contains no representation by Mrs. Collier that she believed that the $5,387 in fees incurred after June, 1990 were either necessary or reasonable. Her only statement concerning her counsel's services came during the hearing before the master, when she stated:

> I find no fault with the attorneys and I certainly don't want to leave the impression that I'm finding fault with them.
>
> \*     \*     \*     \*     \*     \*
>
> Well, let me put it like this. I would have liked for everything to have been done to the level [sic] of the law. Because I've always been a person that's been a stickler for doing things right. And I would have liked for them to have been done to the letter of the law. But I see that no harm has been done on any of it because we haven't absconded with any of the funds and no harm has been

> done as I see in any way. I just don't see of any harm that's been done.

These observations fall short of attesting to the necessity and reasonableness of the requested legal fees.

**5.**

■■■ Even if we ignored the procedural defect in the request for the post–June, 1990 legal fees, there is a more fundamental reason to deny the request. The fees were incurred, not for the estate's primary benefit, but for the benefit of the executrix, the accountant, and the law firm.

An estate should not be charged with an executor's legal expenses if the executor's conduct is at the root of the litigation. *Tindell v. State*, 671 S.W.2d 691, 693 (Tex. Ct.App.1984). Thus, when an executor is charged with breach of its fiduciary duties or when its accounting is challenged, it is the outcome of the proceedings that determines whether the executor's legal expenses incurred in defending against the challenge should be assessed against the estate. *In re Estate of Birnbaum*, 112 A.D.2d 778, 492 N.Y.S.2d 275, 277 (1985).

If the executor successfully defends its conduct, its legal expenses may be charged against the estate. *In re Estate of Beach*, 15 Cal.3d 623, 125 Cal.Rptr. 570, 542 P.2d 994, 1008 (1975), *cert. denied*, 434 U.S. 1046, 98 S.Ct. 891, 54 L.Ed.2d 797 (1978). If, however, the account is defective, then the estate should not be charged. *In re Estate of Painter*, 671 P.2d 1331, 1334 (Colo.Ct.App.1983); *Hill v. Roberts*, 311 S.W.2d 569, 572 (Ky.Ct.App.1958). If the executor does not prevail completely, or where it is partially to blame for bringing about unnecessary litigation, the executor rather than the estate should be responsible for its legal expenses. *In re Baldwin's Estate*, 311 Mich. 288, 18 N.W.2d 827, 837 (1945); *In re Estate of Valentino*, 128 Mich.App. 87, 339 N.W.2d 698, 702 (1983).

The law firm does not take issue with the probate court's decision to reduce its fee for the services provided prior to June, 1990 or to the reduction of the fees for

*Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn.  1980).

Mrs. Collier and her accountant. Therefore, the firm has conceded that the requested fees were too high. Nonetheless, it asserts that its last claim for fees should be approved because most of the fees requested by the executor were approved. We decline to adopt this approach because it will not adequately deter selfdealing and over-reaching by executors or the professionals assisting them.

Executors, as fiduciaries, owe a duty of undivided loyalty to the estate and must deal with the beneficiaries in the utmost good faith. *Mason v. Pearson*, 668 S.W.2d 656, 663 (Tenn.Ct.App.1984); *In re Cuneo's Estate*, 63 Tenn.App. at 515, 475 S.W.2d at 676; *Baker v. Baker*, 24 Tenn.App. 220, 240, 142 S.W.2d 737, 750 (1940). Part of this duty includes incurring only those expenses that are reasonably necessary for the proper administration of the estate.

While some hardship could conceivably result in adopting a strict rule with regard to fees charged against an estate, the best way to insure that fiduciary obligations are met is to follow the rule that an estate will not be required to pay the executor's legal expenses incurred to defend its request for fees unless the court determines that all the requested fees were necessary and reasonable. This approach will inure to the benefit of estates by promoting conservatism in the administration of estates and by deterring requests for questionable fees.

## IV.

We affirm the judgment as modified by this opinion and remand the case to the probate court for further proceedings. We also tax the costs of this appeal against Jewel B. Collier personally for which execution, if necessary, may issue.

CANTRELL and FRANKS, JJ., concur.

## ORDER TAXING COSTS

This appeal involves a dispute between two residuary beneficiaries and the executrix of their grandmother's estate concerning the fees and costs the executrix sought to charge back to the estate. On January 15, 1992, we filed an opinion reducing the fees awarded by the probate court and taxing the costs of the appeal against the executrix. *In re Estate of Wallace*, App. No. 01–A–01–9012–PB–00439 (Tenn.Ct.App. Jan. 15, 1992).

On February 4, 1992, the beneficiaries filed an itemized and verified bill for additional costs in accordance with Tenn. R.App.P. 40(d) seeking $1,243.50 for the costs they incurred in reproducing the briefs filed in this court and in transcribing the depositions and the hearing before the special master that were included in the appellate record. The executrix objected to these additional costs.

The clerk of this court issued the mandate on February 19, 1992 after the time for filing an application for permission to appeal elapsed. On February, 21, 1992, the clerk filed a report finding that the additional costs sought by the beneficiaries were allowable under Tenn.R.App.P. 40(c).

The executrix filed a motion to reconsider on February 25, 1992, and the beneficiaries filed a response two days later. On February 28, 1992, the executrix tendered to the clerk of this court $726.25 to pay for the all the costs in the trial and appellate court except for the additional costs requested by the beneficiaries. On March 1, 1992, the clerk of this court filed a supplemental report finding the motion to reconsider without merit. The executrix has now filed another motion to reconsider directed to the attention of this court.

It is now beyond question that the costs on appeal can include more than just the litigation tax and the direct expenses of the clerks of the trial and appellate courts. Tenn.R.App.P. 40(c) provides that

> Recoverable costs on appeal include the cost of preparing and transmitting the record, the cost of a transcript of the evidence or proceedings, the cost of producing necessary copies of briefs and the record, the premium paid for bonds to preserve rights pending appeal, and any other fees of the appellate court or clerk.

The Tennessee Supreme Court has found that this rule permits taxing as costs on

appeal the costs of preparing the transcript of the proceedings. *Smith v. Watts,* 625 S.W.2d 712, 712 (Tenn.1981); *Rodgers v. Russell,* 733 S.W.2d 79, 88–89 (Tenn.Ct. App.1987). Construing a similar rule giving trial court's the authority to tax "discretionary costs," [1] the Supreme Court has held that court reporter's fees, the costs of transcribing depositions, and the fees of expert witnesses can be recoverable as costs. *Locke v. National Union Fire Ins. Co.,* 809 S.W.2d 483, 489 (Tenn.1991).

This court was fully cognizant of Tenn. R.App.P. 40(c) when it taxed the costs of this appeal to the executrix and not to the estate. The expenses requested by the beneficiaries in their February 4, 1992 submittal are allowable costs under Tenn. R.App.P. 40(d). Therefore, we affirm the clerk's conclusion that the executrix must pay these additional costs and direct that the executrix do so within thirty days following the entry of this order.