IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 1, 2005 Session

## IN RE:  THE ESTATE OF JOSEPH OWEN BOOTE, JR., DECEDENT, ET AL. v. HELEN BOOTE SHIVERS, ET AL.

**A Direct Appeal from the Chancery Court for Marshall County**
**No. 12099     The Honorable J. B. Cox, Chancellor**

_____

**No. M2003-02656-COA-R3-CV - Filed May 27, 2005**

_____

Appellants are residuary beneficiaries of their father's estate. They challenge the estate's payment of attorney fees and expenses incurred by executrix (the widow of testator and stepmother of Appellants) in unsuccessfully defending against her removal as executrix.  Appellants contend that because litigation concerning the removal of their stepmother as executrix was solely for the personal benefit of the executrix and was necessitated by her neglect in administering the estate, the trial court erred as a matter of law in ordering the attorney fees and expenses incurred in defending against the removal petition be paid out of the estate. Appellee, the former executrix, contends that the trial court did not err in exercising its discretion in ordering legal fees to be paid out of estate. Finding that the trial court erred in ordering the expenses paid out of the estate, we reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HERSCHEL P. FRANKS, P.J., joined.

Andrée Sophia Blumstein and William L. Harbison of Nashville for Appellants, Helen Boote Shivers and Linda Boote

T. Richard Travis of Nashville for Appellee, The Estate of Joseph Owen Boote, Jr., Martha M. Boote, Personal Representative

## OPINION

# I. FACTUAL AND PROCEDURAL HISTORY[1]

Joseph Owen Boote, Jr., died on September 12, 2001. In December 2001, Mr. Boote's will was admitted to probate in solemn form and his widow and second wife, Martha Boote, was appointed executrix of the estate. Mr. Boote's two daughters from his first marriage, the residuary beneficiaries of the estate and his only children, did not object to the appointment of Mrs. Boote as the executrix at that time. However, six months later, Mr. Boote's daughters petitioned the trial court to remove Mrs. Boote as executrix because they alleged she had neglected her fiduciary duties to the estate, ignored orders of the court, and, in an individual capacity, instituted legal action against the estate, putting herself in a conflict of interest with respect to the estate to which she owed a duty of loyalty. When the removal petition was filed, Thomas A. Davidson was attorney for the estate and Walter Bussart represented Mrs. Boote in her individual capacity. Shortly thereafter, the law firm of Manier & Herod was substituted for Mr. Davidson as counsel for the Estate, and also undertook to defend Mrs. Boote personally against the removal petition.

On September 11, 2002, a trial was held that resulted in Mrs. Boote's removal as executrix. Manier & Herod participated in that trial to defend Mrs. Boote against removal. Mr. Bussart continued to represent Mrs. Boote individually, also appearing on her behalf at the removal hearing.

The trial court found that Mrs. Boote "has a conflict of interest and has neglected her duties as executor," and granted the removal petition of the residuary beneficiaries and removed Mrs. Boote as executrix effective on September 11, 2002, the date of the removal trial. After Mrs. Boote's removal, Manier & Herod filed a motion for payment from the estate of an additional $65,533.12 in legal fees and costs for services that it rendered between August 2, 2002 and September 30, 2002.

Mr. Boote's daughters objected "to payment by the Estate of these fees because they represent work incurred for the benefit of Mrs. Boote rather than for the benefit of the Estate." They pointed out that the majority of the fees for which Manier & Herod sought approval was generated in connection with resisting the Removal Petition, a resistance that served only Mrs. Boote's own personal interests and offered no conceivable benefit to the estate. The daughters asked the trial court not to approve payment from the estate of more than $16,000 of the $65,533.12. In the alternative, they asked that any fees paid by the estate that did not inure to the benefit of the estate be charged against Mrs. Boote's share of the estate so that ultimate distribution to her would be reduced accordingly.

The trial court approved payment of $61,633.12 in attorney fees and costs from the estate. The residuary beneficiaries then moved the trial court, pursuant to Rule 59.04, Tenn. R. Civ. P., to alter or amend its Order approving payment of $61,633.12 from the estate. The court denied Appellants' motion to alter or amend. Helen Shivers and Linda Boote have appealed. They seek

---

[1] The facts in this case are essentially undisputed. We have taken our statement of Factual and Procedural History almost verbatim from the appeal brief filed by the Appellants.

reversal of the lower court's approval of payment from the estate those fees and costs that, in their view, are properly charged to Mrs. Boote personally.

## III. ISSUE

The Appellants present the following issue for review on appeal:

> Whether the trial court erred in approving payment of attorney fees and expenses by the estate, when those fees and expenses did not inure to the benefit of the estate but rather were incurred by the executrix in defending herself — unsuccessfully — against a petition to remove her as executrix because of her breach of fiduciary duty to the estate?

## IV. STANDARD OF REVIEW

In this appeal, the chancery court's findings of fact will be reviewed *de novo* upon the record, accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). The award of attorney fees rests within the sound discretion of the trial court; therefore, we will review the chancery court's award of attorney fees under an abuse of discretion standard. *See **In re Estate of Wallace***, 829 S.W.2d 696, 700 (Tenn. Ct. App. 1992); ***In re Estate of Griffith***, 452 S.W.2d 895, 902 (Tenn. Ct. App. 1969).

## V. ANALYSIS

The issue in this appeal is whether the Estate of Mr. Boote should be charged with attorney fees incurred in defending against the removal of Mrs. Boote as executor. We will first review the arguments of the parties. Then we will discuss the applicable law and its application to the facts of this appeal.

The daughters argue that the legal services devoted to defending against the removal suit inured to the benefit only of Mrs. Boote, and not to the estate, and therefore the chancery court's order should be reversed. According to the daughters, the fees and costs incurred in unsuccessfully defending Mrs. Boote against removal as executrix are not chargeable to the estate because she did not prevail, and because they did not inure to the benefit of the Estate. Furthermore, the daughters contend that the trial court further erred in approving fees and costs by the Estate since the Estate did not properly certify that the fees and costs were required and inured to the benefit of the Estate.

The Estate argues that there are multiple reasons why the order should be affirmed. First, the Estate contends, the trial court should have dismissed the daughters' Motion to Alter or Amend, because the Motion "merely presented a new argument consisting of the specification of particular items within the itemized statement that was available to the Daughters from the time the motion was filed." The Estate points out that Rule 59 motions should not be granted if they seek simply to relitigate matters that have already been adjudicated.

Second, the Estate contends that the daughters never presented the issue of whether specific legal services rendered to the Estate were properly allowed as administrative expenses of the Estate. In its appeal brief, the Estate argues, "for whatever reason or strategy that the Daughters may have been pursuing at the trial level, they never presented any evidence, or even argument, to the Trial Court with respect to the fees that they now specifically request this Court to review and reject." The Estate notes that, "the Daughters' strategy for objecting to the services rendered to the Estate did not include any evidence or even identification of specific services which the Daughters found objectionable.... [T]he Daughters' strategy was simply to argue that in their opinion some of the fee should be disallowed." The Estate argues that the document submitted as Appendix 1 to the daughters' brief on appeal should be excluded from consideration as ex parte evidence, since it was not presented to the Trial Court at its December 11, 2002 hearing.

Third, the Estate contends that the trial court properly found that the attorney fees incurred by Mrs. Boote were incurred in good faith, on behalf of the Estate, and inured to the benefit of the Estate. The Estate contends that Manier & Herod only represented the Estate—not Mrs. Boote in her personal capacity—and that Mrs. Boote "appreciated the often ignored distinction between her role as Personal Representative and as beneficiary and that she acted accordingly at all times during all parts of the proceedings at issue before the Court." The Estate further contends that Mrs. Boote's removal was not the result of bad faith, fraud, or undue influence by Mrs. Boote, but that she was removed solely due to the "technical conflict of interest" inherent in her status as an individual seeking rights against the Estate, while at the same time serving as Personal Representative of the Estate.

Fourth, and finally, the Estate contends that the form in which the request for approval of the Estate's expenses was presented to the Chancery Court was consistent with law and uniform practice. Contrary to the daughters' argument that the Estate did not attest that the services were performed for the benefit of the estate, the Estate contends:

> The application was appropriate, consistent with common practice and the evidence before the Court was ample for the Court to make the ruling requested by Estate's counsel relative to the award of attorneys' fees incurred by the Estate in the good faith defense of the provisions of the Last Will and Testament of the decedent.

We begin our analysis by addressing the first and second of the arguments advanced by the Estate—its contention that there is not a sufficient record on appeal for us to reverse the trial court's decision, and its contention that, at the trial level, the daughters never identified specific services they found objectionable. As to the record on appeal, the Estate asserts that the daughters only presented an itemization of the challenged attorneys' fees and costs as an attachment to a memorandum at trial (and attached the same itemization as an appendix to their appeal brief). The Estate points out that under Tenn. R. App. P. 24(a), exhibits to trial briefs are not part of the record on appeal, and asserts that, therefore, this Court is unable to consider such exhibits on appeal. It is true that memoranda at trial are not part of the record on appeal, and that if an exhibit were only presented to the trial court as an attachment to a trial memorandum, we would be unable to consider

it on appeal. However, such is not the case here. The document of which the Estate complains is an itemized invoice, prepared on the letterhead of the Law Offices of Manier & Herod, with detailed descriptions of the services performed for each entry. This document was introduced at trial as Exhibit A to the *Estate's* Motion for Approval of Interim Fees and Costs. This exhibit is, without question, part of the record on appeal. Furthermore, it is clear from the transcript of the proceedings below—namely, the December 11, 2002 hearing—that the trial court relied upon this document in making the judgment from which the daughters appeal. Now, the Estate appears to contend that, because the exhibit to the daughters' appeal brief is marked up in blue ink, highlighting which fees related to defending against the removal action, that such markings effectively make this a different document, and one that should have been properly introduced into evidence if it were to be considered on appeal. We disagree. We consider the document in the brief to be in the nature of a concession by Appellants that some of the legal charges could be properly estate expenses. The underlying information, which the markings only highlight, is evident in the text of the document that was properly introduced as an exhibit to the Estate's motion; furthermore, from reading the entries it is evident that the services highlighted were performed in defending against the removal suit. As to the Estate's argument that the daughters never specifically identified the fees they found objectionable, we find this argument unpersuasive as well. Even a cursory review of the Manier & Herod invoice leaves no doubt that many of the entries related to the defense of the removal action, since the descriptions alongside the entries specify, in some detail, the services performed. The daughters, in the proceedings before the trial court, made it clear that they objected to the payment out of the Estate of fees relating to the defense of the removal action. Given the specificity of the descriptions in the invoice, the invoice itself was a sufficient itemization of the expenses to which the daughters objected.

We now turn to the question of whether, under Tennessee law, the attorney fees and costs related to Mrs. Boote's defense of the removal action brought by the daughters were chargeable to the Estate. Tennessee law on this question is not abundant; unlike a number of other states, Tennessee has no statutes offering guidance on when attorney fees incurred by an executor are payable by the estate in defending against a removal action. The parties direct us to a few Tennessee court opinions that, in their view, direct our decision in this case. The daughters rely upon the case of *In re Estate of Wallace*, 829 S.W.2d 696 (Tenn. Ct. App. 1992). In *Wallace*, the beneficiaries of an estate challenged, *inter alia*, attorney fees incurred by the executor of the estate in defending the executor's original fee request against a challenge brought by the beneficiaries. The Court reasoned that whether the attorney fees were chargeable to the estate depended upon whether the fees were incurred for the estate's primary benefit, or whether they were incurred for the benefit of the executrix, the accountant, and the law firm. The Court went on to say:

> An estate should not be charged with an executor's legal expenses if the executor's conduct is at the root of the litigation. Thus, when an executor is charged with breach of its fiduciary duties or when its accounting is challenged, it is the outcome of the proceedings that determines whether the executor's legal expenses incurred in defending against the challenge should be assessed against the estate.

If the executor successfully defends its conduct, its legal expenses may be charged against the estate. If, however, the account is defective, then the estate should not be charged. If the executor does not prevail completely, or where it is partially to blame for bringing about unnecessary litigation, the executor rather than the estate should be responsible for its legal expenses.

*Id*. at 704 (internal citations omitted). The Estate argues that *Wallace* is distinguishable from the facts of the case at bar, because the challenged fees in *Wallace* made up a much higher percentage of the estate's value than do the fees in the case at bar; and because the executrix in *Wallace* charged excessively high fees for her own services, some of which were manifestly unnecessary. By contrast, the Estate contends, "the action to remove [Mrs. Boote] involved NO allegations of bad faith, only an allegation of a technical conflict of interest." A review of the record shows that there was more at issue in the instant case than a technical conflict of interest. The daughters sought Mrs. Boote's removal on seven grounds in addition to the "technical" conflict of interest: (1) Mrs. Boote allegedly deposited estate funds into her own bank account; (2) she allegedly was unresponsive to the daughters' inquiries concerning stock in Tricon (later called Yum Brands), a multi-million dollar asset of the estate, and she did not include this asset in estimated taxes; (3) Mrs. Boote allegedly refused the daughters' entreaties, and a court order, to make a distribution of Mr. Boote's personal effects, and only indicated a willingness to make the distribution after the daughters filed a petition for removal of executor; (4) Mrs. Boote allegedly failed to provide information about estate assets and administration on a periodic basis, as required by court order, until the daughters filed the petition to remove executor; (5) Mrs. Boote allegedly failed to investigate whether Mr. Boote's "significant pattern" of lifetime transfers of assets presented issues to be considered for possible gift tax purposes or inclusion in Mr. Boote's estate; (6) Mrs. Boote failed to examine a large number of business records left by Mr. Boote to determine whether there are undiscovered assets of the estate, an antenuptial agreement, or correspondence concerning an antenuptial agreement; (7) Mrs. Boote failed to file a timely inventory of the estate, and filed an inaccurate initial inventory. The Estate argued, in proceedings before the trial court, that these seven issues were irrelevant because Mrs. Boote had ultimately cooperated; but the daughters contended that she cooperated only after they had brought proceedings to force Mrs. Boote's removal as executor.

The trial court concluded that Mrs. Boote neglected her duties as executor. At the September 11, 2002 hearing, just after hearing argument by counsel for the parties concerning Mrs. Boote's claim for a spousal share of the Estate, and her claim for spousal support, the trial court stated:

Well, I think when there is a dissent evidenced in the record by the executor, that there clearly raises its head the absolute prospect of frustration of the intent of the testator.

Now, there may be a statutory right for that, which may be separate and apart, but my belief based upon that and **based upon some of the lack of cooperation relative to the personal property**, I guess as much as anything else, leads the Court to believe that removal would be proper in this case.

(Emphasis added.) In its Final Order on Removal of Executor, the trial court stated, in relevant part:

> The Court hereby removes Martha M. Boote as Executor of the Estate of Joseph Owen Boote Jr. because the Court finds that she has a conflict of interest and has neglected her duties as executor. This removal is effective September 11, 2002.

These statements, made from the bench and in the trial court's final order, demonstrates that the trial court credited the daughters' seven claims concerning Mrs. Boote's handling of Mr. Boote's personal property. It is clear, then, that Mrs. Boote's removal was precipitated not only by a "technical conflict of interest," but also by her own derelictions in administering the Estate. Upon our review of the evidence, including the testimony and documentary evidence adduced at trial, we conclude that the evidence does not preponderate against the trial court's finding that Mrs. Boote's lack of cooperation in the administration of the Estate required her removal. Our task, then, is to determine whether the court's removal of Mrs. Boote, both for the conflict of interest as well as her neglect in administering the estate, should preclude the Estate from being charged with the attorney fees and costs incurred in defending against the removal.

The *Wallace* case, discussed *supra*, suggests that the Estate should not be charged with Mrs. Boote's attorney fees and costs in defending against the removal petition. In *Wallace* we made it clear that the payment of attorney fees and costs in such an action hinged upon the executor's conduct—whether such conduct was "at the root of the litigation":

> An estate should not be charged with an executor's legal expenses if the executor's conduct is at the root of the litigation. Thus, when an executor is charged with breach of its fiduciary duties or when its accounting is challenged, it is the outcome of the proceedings that determines whether the executor's legal expenses incurred in defending against the challenge should be assessed against the estate.

*Id*. at 704. The Estate attempts mightily to persuade us that, in fact, *Wallace* applies only to those cases in which the executor's bad faith or breach of fiduciary duties has been established, resulting in the executor's removal. But we do not believe *Wallace* applies so narrowly; in the passage just quoted, we enunciated the general principle that the Estate should not be charged with an executor's legal fees and costs when the "executor's conduct is at the root of the litigation." We went on, by way of example, to explain that if an executor were charged with breach of fiduciary duties, and were unsuccessful in defending against the removal suit, the fees should not be charged to the Estate. We conclude that in the case at bar, Mrs. Boote's uncooperative behavior in administering the estate was part of the reason she was removed as executor, and thus the Estate should not be charged with her legal fees in defending against removal.

The Estate directs us to the case of *In re Roark*, 829 S.W.2d 688 (Tenn. Ct. App. 1991), in support of their proposition that "it is the good faith claim to a legal entitlement that supports the executor's actions and award of fees and expenses." In *Roark*, beneficiaries under a will petitioned for the removal of an executor after they discovered that the executor held, as a tenant in common

with the decedent, a $214,668.46 certificate of deposit which the beneficiaries claimed should be included in the estate. The trial court entered an order imposing a resulting trust, for the benefit of the estate, on the certificate of deposit; removing the executor; and denying fees and expenses for the executor. We reversed, concluding that the CD was "clear and unambiguous," that the executor was the lawful owner of the CD and that he was entitled to be reinstated as executor of the estate. We also held that he was entitled to compensation for his services as executor and to compensation for the legal services rendered to him. We stated, "Since Mr. Bischoff was rightfully claiming only that which was legally his, what appeared to be adverse to the best interests of the estate is no longer valid." *Id*. at 695. The Estate in the case at bar contends that the facts of *Roark* are similar to the facts of the instant case, and that Mrs. Boote's claim against the estate—and resulting technical conflict of interest—was not sufficient to take her defense against removal out of the realm of good faith. We disagree with this characterization of the facts here. In fact, the facts of the instant case are quite different from those of *Roark*; there was no suggestion in *Roark* that the executor was neglectful in administering the estate; the dispute in *Roark* centered entirely around a possible conflict engendered by the executor's claim to a certificate of deposit that we concluded he owned.

As above noted, the *Wallace* Court held that "it is the outcome of the proceedings that determines whether the executor's legal expenses incurred in defending against a challenge should be assessed against the estate." *In re Estate of Wallace*, 829 S.W.2d 696, 704 (Tenn. Ct. App. 1992). This conclusion is supported by the law in other states as well. *See In re Estate of Kerr*, 949 P.2d 810 (Wash. 1998) (The Supreme Court of Washington upheld the award of attorneys' fees to an estate whose personal representative successfully defends an action for removal); *In re Estate of Hammond*, 547 N.W.2d 36 (Mich. Ct. App. 1996) (Court of Appeals of Michigan held that "[a]ttorney fees incurred by an executor to defend against a petition for his removal are properly chargeable against the estate where no wrongdoing is proven."); *In re Estate of Stone*, 768 P.2d 334 (Mont. 1989) (Supreme Court of Montana held that where personal representative was so remiss in performing duties as personal representative that he was removed for cause, his legal fees in resisting removal should not be reimbursed by estate.)

Furthermore, some cases support the right of those seeking the removal of an executor to have their legal expenses related to such actions paid out of the estate. *See In re Estate of Riordan*, 814 N.E.2d 597 (Ill. App. Ct. 2004) (Appellate Court of Illinois held that when heirs bring an action against the estate's executor, and the suit enhances the value of the estate, "they are entitled to have their attorney fees paid from the estate."); *In re Estate of Jones*, 93 P.3d 147 (Wash. 2004) (Beneficiaries sought removal of personal representative of mother's estate; Supreme Court of Washington held that an administrator should personally pay the attorney fees necessitated by his multiple breaches of fiduciary duty.) Courts in such actions often look to whether the action can be said to render a benefit to the estate. *See In re Estate of Geangel*, 768 N.E.2d 1235, 1242 (Ohio Ct. App. 2002). ("[A] probate court may allow payment of reasonable fees from the estate to an attorney employed by an heir or beneficiary where such attorney's services were necessarily and successfully rendered to the benefit of the whole estate.")

Moreover, even where a court declines to remove an executor, the executor's bad-faith defense of an action may result in the executor being personally liable for attorney fees incurred in defending the action. *See* **Norman v. Finley**, No. 04-01-00394, 2002 WL. 341585 (Tex. App. 2002) (Court of Appeals of Texas held that, while the probate court had declined to remove the executor, she did not defend the action in good faith, due to several derelictions in her administration of the estate. The court wrote, "the right to recovery of attorneys' fees and costs is conditioned on the defense of the removal action in good faith.")

We conclude that the legal expenses and fees incurred by Mrs. Boote in defending against the removal suit should not be charged to the Estate. The trial court should make a determination of the total amount of legal services related to the defense of the removal action.

## VI. CONCLUSION

The trial court's judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs in this appeal are taxed to Appellee, Martha M. Boote.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

-9-