IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 1, 2007 Session

## MARGARET ANN KING v. CHRISTY KING SPAIN (HUDSON), ET AL.

**Appeal from the Chancery Court for Robertson County**
**No. 18168     Laurence M. McMillan, Jr., Chancellor**

---

**No. M2006-02178-COA-R3-CV - Filed October 31, 2007**

---

This case involves a dispute over the division of proceeds from the sale of a failed business venture. The trial court referred certain matters to a special master for determination. The special master made several specific findings, but left issues open to be decided by the trial court. The trial court adopted the findings of the special master and made no additional determinations. Appellants appeal. We must dismiss this appeal because there is no final order resolving all the claims between the parties and remand the matter back to the trial court for further determinations.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal of the Judgment of the Chancery Court**
**Dismissed and Case Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Lee Borthick, Springfield, Tennessee, for the appellants, Christy King Spain (Hudson) and Wanda Faye King.

John M. Cannon, Goodlettsville, Tennessee, for the appellee, Margaret Ann King.

**OPINION**

### I. FACTUAL BACKGROUND

Wayne King ("Wayne") and Wanda King ("Wanda") are married. They have an adult daughter, Christy King Spain Hudson ("Christy"). Margaret Ann King ("Margaret") is Wayne's sister. Margaret, Christy, and Wanda purchased a Merle Norman Cosmetics franchise in Springfield, Tennessee; all made capital contributions to the business, albeit in different amounts. No formal partnership agreement was signed. Operations began in December of 2000. The parties experienced difficulty getting along while working together. The record keeping of the business was sloppy, especially in the area of finances. Wanda testified at a hearing, in regard to receipts of the business, that "[a]nything that was bought in the business . . . was always put in a big plastic box – a blue box on the – back on the office shelf behind my desk." When asked about credit card statements of the

business, Christy testified that "it was a jumbled up mess." Such lack of documentation has caused major problems in appropriately distributing assets.

The parties sold the business in January of 2003. After paying outstanding debts, the remaining proceeds from the sale, approximately $73,000.00, were placed in an escrow account. Because they could not agree on the division of the proceeds from the sale, Margaret filed suit on April 30, 2003, asking that Christy and Wanda be required to provide an accounting for the business. The complaint further requested that the trial court make a finding of a fifty percent partnership between Margaret and Christy only and divide the funds of the business being held in escrow accordingly. Christy and Wanda then filed a Motion For An Order Of Reference For An Accounting, in which they asked the trial court to refer the matter to a special master to sort through the finances of the business. In the motion, Christy and Wanda acknowledged that "the partnership lacked organized business records." Specifically, the motion requested that the trial court refer several issues to a special master, including but not limited to: the amount of paid-in capital and business expenses contributed to the partnership by each party and Wayne, which business expenses could actually be classified as legitimate, the origination of the funds in escrow, and the partnership interests of each party and Wayne.

In an Order Of Reference For An Accounting, filed on August 4, 2004, the trial court appointed Clerk and Master Ken Hudgens ("Hudgens") as special master. The Order stated the following in regard to Hudgens' responsibilities:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT THE SPECIAL MASTER SHALL:
>
> 1. Determine the amount of paid in capital and business expenses contributed to the partnership by each of the parties.
>
> 2. Determine the amount of paid in capital and business expenses contributed to the partnership by Wayne King, husband of Wanda Faye King.
>
> 3. Determine what expenses claimed to be paid by each party are legitimate business expenses and therefore eligible to be considered in the distribution of said assets.
>
> 4. Determine whether any of the partnership funds currently in the Escrow Account of Gay Dilliha are profit as opposed to paid-in capital.

Special Master Hudgens issued a Master's Report On Reference, addressing the four charges. The Report made a specific finding that Margaret and Christy were the business partners and the escrowed funds should be divided equally between them and also noted that "[p]oor business and accounting practices make a determination of business expenses very difficult to accurately ascertain." However, the Report did note that Margaret was due $31,383.99 from the escrow funds for expenses that she personally paid on behalf of the business. The trial court issued an Order

Confirming the Report on Reference, instructing that the escrow funds be dispensed according to Special Master Hudgens' determinations.

The day after the trial court issued its Order Confirming The Report On Reference, Christy and Wanda filed a Motion To Set Aside the Order, arguing that Special Master Hudgens exceeded the scope of the Order of Reference. Christy and Wanda also filed Exceptions To Master's Report with an edited proposed Order of Reference attached. The proposed Order of Reference removed any finding of the partnership existing only between Margaret and Christy and the finding that Margaret was due any escrow funds for business expenses she paid with her personal funds.

On September 15, 2005, the trial court issued a Memorandum Opinion, setting aside Special Master Hudgens' report "with the exception of the finding made 'As to 1' which is hereby adopted and confirmed." The Master's finding "As to 1" states the following in its entirety:

As to 1, I report that:

The purchase price of Merle Norman was $75,000.00. A $25,000.00 down payment was made in Dr. Cantrell's Office. The $25,000.00 consisted of $20,000.00 submitted by Wayne King and wife, Faye King, and the $5,000.00 balance was submitted by Christy Hudson. Margaret Ann King made a initial payment of $6,000.00 in December, 2000 and a later payment of $14,000.00 in April, 2001 for a total down payment of $20,000.00. From the testimony submitted, it appears that Christy Hudson and Margaret Ann King were the business partners. That Wayne King and Faye King supported their daughter, Christy Hudson, with a substantial financial backing as well as spending many hours working in the operation of the store. The two partners expended personal out of pocket money over the course of the business some of which had documentation and many which did not. The testimony indicated major expenses were split by Margaret Ann King and her brother, Wayne King, but that many other smaller expenses were not. Most of these claims seemed legitimate but without proper record keeping and documentation could not be validated.

The trial court's Opinion also gives instructions to the parties to identify testimony in the record that "they deem relevant to the determination of who may be 'partners.'" The matter was referred back to a special master to complete an accounting or conclude that one is impossible, instructing the parties to assist by submitting expenses. The trial court instructed the special master to employ a CPA to examine such submitted expenses to determine which were legitimate. Finally, the trial court's memorandum Opinion stated that the CPA shall "make a recommendation as to paragraph 4 of the original Order of Reference[1]."

---

[1] As quoted above, paragraph four of the original Order of Reference instructed the Special Master to "[d]etermine whether any of the partnership funds currently in the Escrow Account of Gay Dilliha are profit as opposed to paid-in capital."

The trial court then, by Order, appointed Robert T. Bateman ("Bateman") as special master to review the Master's Report On Reference. Special Master Bateman, assuming the role assigned to a CPA, issued an Order on April 12, 2006. The Order made several specific findings. First, Special Master Bateman noted that on January 11, 2006, he met with Hudgens and counsel for the parties. He described the meeting as follows:

> At that time, the undersigned inquired of counsel as to whether it was the parties' position that the undersigned was to re-examine Mr. Hudgens' recommendation regarding the partnership interests. If so, the undersigned wanted the parties to submit copies of any individual tax returns filed by the parties to determine how the parties reported their partnership interests. It was the consensus of counsel for the parties that the undersigned was not to re-examine Mr. Hudgens' findings regarding the partnership interests and, therefore, no such recommendation is made.

Second, Special Master Bateman determined that $39,225.82 of credit and debit card charges, checks, and cash purchases by Margaret were properly documented and classified as appropriate business expenses that had yet to be reimbursed. Third, as for any receipts submitted by Christy, Wanda, and Wayne, Special Master Bateman noted that "with one exception, there is no support that these expenses are related to the business." The one exception was a business purchase in the amount of $1,690.78. Fourth, the Order makes clear that Wayne was not a party to the lawsuit and, if he could make a claim, such claim was limited to the amount of $1,690.78. Fifth, Special Master Bateman determined that Christy was responsible for $12,987.69 worth of non business related credit card purchases, and $13,132.00 worth of unauthorized draws from the business. Sixth, the Order stated that the business was never profitable and that none of the funds held in escrow represented profits.

Following Special Master Bateman's Opinion, Christy and Wanda moved the trial court for an order setting the remaining issues for trial, arguing that "the report of the Special Master addressed matters outside the scope of reference for which the parties have not had the opportunity to present evidence." At a hearing on May 22, 2006, counsel for Christy and Wanda alerted the trial court to the fact that several issues had been left open by the special master. After Christy and Wanda moved the trial court for mediation, the Chancellor responded:

> I am going to deny that. We have spent days and days and days on this case. I am going to go through it. I am going to see what portions of Mr. Bateman's report I intend to approve and portions I intend to disapprove, if any; what issues are left; what I already have to make those decisions on; what I need to refer to Mr. Bateman; and we are going to conclude this matter, at least at the trial level, very soon.

Finally, on September 25, 2006, the trial court adopted and confirmed the special master's report in its entirety. In its Memorandum Opinion, the court stated that "all issues in the case have been decided by the Special Master."

Christy Spain and Wanda King have appealed and present numerous issues on appeal, including the trial court's adoption of the Special Master's Report. They hold fast to their argument

that the Special Master's Report exceeded the scope of the Order of Reference. Specifically, they take issue with the findings regarding monies owed, both by Christy and to Margaret, as they maintain that they were not given the same treatment as Margaret when receipts and documentation related to the purchases were examined. Christy and Wanda further argue that the records of the business were so convoluted that an accounting was simply impossible. Also, they contest the partnership determination, maintaining that Wanda, and/or Wayne, was in fact a partner in the business.

## II. FINDINGS OF FACT

The special master made a number of specific findings of fact regarding expenditures and other financial matters. The trial court adopted all those findings. Generally, concurrent findings of fact by a master and a chancellor cannot be disturbed by the appellate court. Tenn. Code Ann. § 27-1-113.

This Court recently decided a case that dealt extensively with the standard of review in situations involving the findings of a special master:

> A concurrent finding of fact of the master and chancery court is conclusive on appeal as to those facts, having the same force and effect of a duly-approved jury verdict, except where the finding is on an issue not appropriate for referral, where it is based on error of law or a mixed question of fact and law, or where the factual finding is not based on material evidence. *Aussenberg v. Kramer*, 944 S.W.2d 367, 370 (Tenn. Ct. App.1996); *Archer v. Archer*, 907 S.W.2d 412, 415 (Tenn. Ct. App. 1995); *In re Estate of Wallace*, 829 S.W.2d 696, 699-700 (Tenn. Ct. App.1992); *see also* T.C.A. § 27-1-113. Thus, we must affirm the concurrent findings of the master and chancery court if there is any material evidence supporting them. *Id.* Our review of the trial court's conclusions of law is *de novo*, with no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn.1993).

*In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App.2006). *See also* Tenn. Code Ann. §27-1-113 (2007)*; Manis v. Manis*, 49 S.W.3d 295, 301 (Tenn. Ct. App.2001); *Coates v. Thompson*, 713 S.W.2d 83, 84 (Tenn. Ct. App.1986).

Specifically, Christy and Wanda challenge certain factual findings as being mixed questions of fact and law and based on a lack of material evidence, as noted in their appellate brief:

> It is clear from the record that the Special Master exceeded the Order of Reference in ruling: the draws received by Defendant Christy Hudson should be repaid; that the Plaintiff should receive credit for the credit card balances that she had written off; and that Defendant Christy Hudson should repay payments made on her credit cards. These issues were not presented to the Special Master and the Master's

Report should be found void as to these issues. In addition to being outside the Order of Reference, these matters are mixed questions of fact and law and were therefore not proper issues for the Special Master. The findings of the Special Master allowed for different standards of documentation for the Plaintiff than was afforded the Defendants, as such the Master's Report is not supported by substantial and material evidence. For these reasons the "concurrent findings rule" should not activate and allow the Special Master's Report to stand.

Our resolution of the issues regarding the factual findings, however, would not resolve this appeal. Even if we resolved all of appellants' challenges to the factual allegations, the parties would still be without direction on how to divide the funds now in escrow. That is because the special master left open, and the trial court did not address, a number of questions whose answer is necessary to the ultimate issue of who is entitled to what share of the funds remaining after the dissolution of the business venture. Such questions include who the partners in the venture were, whether Wayne and/or Wanda were partners in the business, and whether the draws were authorized.

### III. UNRESOLVED ISSUES

Tennessee Rule of Civil Procedure 53 governs the appointment of special masters. Specifically, Rule 53.01 allows a court to appoint a special master for any matter pending before it. Rule 53.02 details the specifics of a special master's duties, stating that "[t]he order of reference to the master may specify or limit the master's powers and may direct the master to report only upon particular issues or to do or perform particular acts." Tenn. R. Civ. P. 53.02. Rule 53.03(3) addresses matters of accounting before a special master. Rule 53.04 details the report that is to be filed by the special master.

This Court discussed in depth the role of a special master, in a case with a similar referral to a special master:

> This court remanded this case for the appointment of a special master to "take and state an accounting of the partnership affairs." "An account is a detailed statement of the mutual demands in the nature of debit and credit between the parties...." WILLIAM H. INMAN, GIBSON'S SUITS IN CHANCERY § 405 (7th ed.1988). Among the tasks properly assigned to a special master is that of taking an account. *Id.* at § 251. The procedure is governed by Rule 53 of the Tennessee Rules of Civil Procedure. The trial court's order of reference establishes the scope of the master's duties, but the rule establishes the outer limits of the master's powers:
>
> > The order of reference to the master may specify or limit the master's powers and may direct the master to report only upon particular issues or to do or perform particular acts or to receive and report evidence only, and may fix the time and place for beginning and closing the hearings and for the filing of the master's report.

Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him or her and to do all acts and take all measures necessary or proper for the efficient performance of the duties under the order. The master may require the production before him or her of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. The master may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to put witnesses on oath and may personally examine them and call the parties to the action and examine them upon oath. When a party so requests, the master shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in Rule 43.03.

Tenn. R. Civ. P. 53.01.

Specific requirements apply to the master's report:

The master shall prepare a report upon the matters submitted by the order of reference and, if required to make findings of fact and conclusions of law, the master shall set them forth in the report. The master shall file the report with the clerk of the court and, unless otherwise directed by the order of reference, shall file with it a transcript of the proceedings and of the evidence and the original exhibits.

Tenn. R. Civ. P. 53.04(1) (2001).

*Parks v. Eslinger*, No. M1999-02027-COA-R3-CV, 2003 WL 237597, at *3-4 (Tenn.Ct.App. Feb. 4, 2003).

*Gibson's Suits in Chancery* further identifies the role and responsibilities of a special master:

**§ 17.18. The Master's Report, and What It Should Contain.** -- A report is ordinarily either a formal statement by the Master which finds certain facts, or a formal statement of how he has discharged some duty imposed upon him by the Court. It is, therefore, essential to a complete report that the Master shall fully and definitely respond to every matter referred, to the end that the report may supply the Court with all the facts called for or inquired about. In all respects it should show that the Master has fully and properly discharged every duty imposed on him by the order of reference.

An ideal report should not only contain everything called for, and show that every duty imposed has been performed, but it should contain no recital of facts not called for, and no statement of acts not required to be done. In making his report, the Master must confine himself to the matters referred to him. Those matters circumscribe his authority and limit his jurisdiction. All other matters contained in his report are mere surplusage and impertinence.

The report must not only respond to all the requirements of the order of reference, but it must be positive, definite, and correct; not inferential, hypothetical, or in the alternative as to any matter. The Chancellor wants the Master's findings as to the facts, and his position and affirmative conclusions as to matters of judgment, or opinion. A report, giving alternative states of facts, or alternative conclusions, is no report at all, and will be set aside on motion. The facts called for must be set forth in the report with such precision and particularity, and the duty imposed by the reference must be performed with such fullness and completeness, that the Court will have no difficulty in basing on the report an adjudication as to all and every matter specified in the order of reference.

The Court will not allow anything in an account under the name of general expenses; the party must specify the particulars. Sums in gross should not be allowed in any case; for the party charged therewith has the right to know the items. Lumping charges are generally not only excessive, but are sometimes cloaks for frauds. A report, for these reasons, should contain no lumping credits, but should specify every item of charge or credit.

William H. Inman, *Gibson's Suits in Chancery* § 17.18 (8th ed.2004).

Regarding the duties that Special Master Bateman interpreted to be his under the trial court's Order appointing him special master, he noted that the trial court had set aside its Order confirming Special Master Hudgens' Report on Reference, and then stated:

However, the September 15, 2005 Order did confirm the Special Master's finding as to Issue 1. The September 15, 2005 Order also directed that a CPA be employed to assist the Special Master in determining whether an accounting could be made or if an accounting was not possible, stating the reasons an accounting was not possible. The CPA was also to make a recommendation as to Issue 4 of the original Order of reference. Thus, the CPA was to make recommendations regarding whether it was possible to determine: (1) whether Wayne King incurred any business expenses of the partnership; (2) whether it was possible to determine whether the parties, i.e. Margaret Ann King, Christy King Spain (Hudson) or Wanda Faye King, incurred any business expenses of the partnership; and, (3) whether any of the funds held in escrow represented profits of the partnership.

By Order entered on December 12, 2005, the roles assigned to the CPA were assigned to Robert T. Bateman, Attorney. Pursuant to the December 12, 2005 Order, the undersigned has reviewed the transcripts of the testimony taken before the Special Master on November 12 and 15, 2004, the exhibits filed by the Plaintiff on November 8, 2004 and referred to in the testimony taken before the Special Master, the exhibits introduced by the Defendants as exhibits during the testimony taken before the Special Master, the filings by the parties regarding their respective positions regarding relevant evidence to determine the amount of expenses, and the entire record as a whole.

The trial court adopted Special Master Bateman's report in its entirety, and noted that "all issues in the case have been decided by the Special Master." The report summarized its findings and recommendations in the final paragraph as follows:

In summary, the undersigned recommends that Margaret Ann King be paid $39,225.82 out of the funds held in escrow; that Wayne King and/or Wanda Faye King be reimbursed $1,690.78 out of the funds held in escrow *if the Court finds that Wanda Faye King is a partner and/or that Wayne King is properly before the Court*; that Christy King Spain (Hudson) reimburse the partnership $12,987.69 for payments on her credit cards that were not for business-related expenses; and that Christy King Spain (Hudson) reimburse the partnership $13,132.00 for payments for draws taken *unless the Court finds the partners agreed to the draws*; and that the partnership fund balance should then be divided between the partners in the amount of their respective shares *as determined by the Court*.

(Emphasis added.) Quite obviously, Special Master Bateman did not intend that his report be the final adjudication of a number of issues. He performed his duties as specified, leaving other issues not assigned to him open for determination by the trial court. Although the trial court's memorandum opinion says all issues were decided by the special master, in fact, the special master left some issues to be decided by the trial court. For example, there was no definitive finding of the actual partners to the business, whether or not the draws taken by Christy were approved, and whether Wayne was or should be a party to the suit. Without resolution of these open questions, it is impossible to determine how the escrow funds should be divided and the mutual obligations among the parties.

While the procedural path leading up to this appeal was complicated, this Court is called upon to review the trial court's order that adopted Special Master Bateman's report. We view the summary paragraph of the report as the master's actual findings because it relates back to his original duties, as noted by the Master in the opening of his report. The Master's report left major issues unresolved, and the trial court did not address the unresolved issues. Reading the trial court's order and the Special Master's report together, we are unable to determine how the court resolved the rights and obligations between the parties. Neither the parties nor this court can discern how the funds in escrow are to be distributed and whether any party has additional liability to the others.

The trial court's final order does not resolve all the claims between the parties. According to the Supreme Court of Tennessee:

> [I]n a civil case an appeal as of right may be taken only after the entry of a final judgment. Tenn. R. App. P. 3(a). A final judgment is one that resolves all the issues in the case, "leaving nothing else for the trial court to do." *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App.1997). In contrast, an order that adjudicates fewer than all of the claims, rights, or liabilities of all the parties is not final, but is subject to revision any time before the entry of a final judgment. Tenn. R. App. P. 3(a). Such an order is interlocutory or interim in nature and generally cannot be appealed as of right. *Id.*

*In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn.2003). "Until all issues are decided, actions of the Trial Court remain subject to revision by it and are not appealable as of right." *Solomon v. First American Nat'l Bank*, 774 S.W.2d 935, 939 (Tenn. Ct. App.1989). If there are matters pending before the trial court, and the provisions of Tenn. R. Civ. P. 54.02 are not implicated and not invoked in the judgment or order appealed from, a direct appeal pursuant to Tenn. R. App. P. 3(a) is not appropriate. *Hutchinson v. ARO Corp.*, 653 S.W.2d 738, 740 (Tenn. Ct. App.1983).

This Court cannot complete its responsibility to conduct effective appellate review. Without an effective final order resolving the dispositive issues, we are in no position to make a ruling in this matter. Therefore, this appeal must be dismissed and the case remanded back to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed equally between the parties.

_____
PATRICIA J. COTTRELL, JUDGE