IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 13, 2017 Session

IN RE ESTATE OF JOHN J. BURNETTE

Appeal from the Chancery Court for Hamilton County
No. 99-P-649          Jeffrey M. Atherton, Chancellor

No. E2016-02452-COA-R3-CV

This appeal involves a successor estate administrator's attempt to collect his attorney's fees from a prior administrator. John G. McDougal, the prior administrator, gave his co-administrator, John D. Burnette (Burnette), a check representing the proceeds from the sale of the decedent's real estate. Instead of depositing the check in a Tennessee bank as instructed, Burnette took the check to Florida and deposited it in a bank account there. Afterward, Burnette refused to communicate or cooperate with McDougal. The trial court held that McDougal breached his fiduciary duty to the estate and beneficiaries, and awarded the successor administrator a judgment of $5,523.28. We hold that the undisputed facts establish no negligence or malfeasance on McDougal's part that warrant an award of attorney's fees. Accordingly, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Lee Ortwein, Red Bank, Tennessee, for the appellant, John G. McDougal.

Anna Marie Davenport, Chattanooga, Tennessee, for the appellee, G. Michael Luhowiak.

**OPINION**

# I.

John J. Burnette died intestate on September 19, 1999.[1] His estate was probated in Hamilton County. McDougal and the decedent's son, Burnette, were appointed co-administrators. With the trial court's permission, they sold decedent's real property on May 1, 2000. The net proceeds from the sale approximated $39,419. McDougal testified that the check was made out to the estate. He stated that it was designated "for deposit only." McDougal gave the check to co-administrator Burnette, with instructions to deposit it in an estate account with American National Bank in Chattanooga. Instead, Burnette took the check to Florida, where he resided, and deposited it in a bank account there. McDougal instructed Burnette that the funds were required to be deposited in the estate account in Tennessee, and asked him to transfer the money. McDougal testified that although Burnette initially agreed, he never made the transfer. Burnette thereafter hired an attorney, who instructed McDougal that any communication with Burnette should come through the attorney.

In February 2000, decedent's widow filed for an elective share, a year's support, homestead, exempt property, and other relief. On June 12, 2000, the trial court awarded her, among other things, $5,000 for homestead rights and $13,380 for a year's support. When the payment from the estate was not forthcoming, she filed a motion for contempt against the co-administrators. Following a hearing, the trial court entered an order on August 2, 2001, stating in pertinent part as follows:

> Upon representation of co-administrator's, John D. Burnette, counsel to the Court that John D. Burnette would not be attending said Show Cause hearing and upon further representation that the funds to pay said Judgment [to the widow] as stated in the May 3, 2000, Master's Report had been transferred to Florida where co-administrator John D. Burnette resides, and that said funds were no longer available, the Court found that the administrators of the estate shall be found in contempt. Further, upon oral Motion of co-administrator John McDougal, to remove co-administrator John D. Burnette as co-administrator of the estate, the Court found that Motion to be well taken. It is, therefore,

> ORDERED that John D. Burnette is hereby removed as administrator of the estate of John Jay Burnette and John McDougal shall solely continue as administrator of this estate. ~~It is, further,~~

---

[1] The evidence in the record suggests that the decedent left a holographic will that he signed. Unfortunately, the text of the will was written in long hand by someone other than the decedent.

> ~~ORDERED that the administrators of the estate shall be held in contempt of the Court with further penalties, if any, to be determined at a later hearing of this Court~~.

(Capitalization and striking out in original.) The above language with a line through it is struck through by a handwritten line in the trial court's order. No explanation is provided in the record as to who struck the language, nor the intent of the trial court, if it was the one who edited the order.

The next document in the record following this order is a notice issued by the Clerk & Master on April 6, 2004, instructing McDougal to file a settlement of the estate by April 27, 2004. McDougal responded with a "motion for instructions" in which he alleged that Burnette absconded with the proceeds of the sale of decedent's real estate and thereafter refused to communicate with McDougal. McDougal stated that he tried to have criminal charges brought against Burnette, to no avail. At this point, the estate had no remaining assets other than the proceeds from the real estate sale. McDougal asked the court to "give instructions as to the next possible move for the attorney for the estate or allow [him] to close the estate with what has been passed out."

On August 24, 2006, the trial court entered an order removing McDougal as administrator and appointing G. Michael Luhowiak as successor administrator.[2] Over four years later, on October 5, 2010, Luhowiak filed a motion for extension of time to file a settlement of the estate. The motion states that "[t]he Successor Administrator would show that an equity action has been commenced against the previous Administrator, John McDougal, and that action is still pending." There are no pleadings from that separate action in the record before us. McDougal testified that the successor administrator sued him for breach of his duty as administrator of the estate. It is undisputed that Luhowiak voluntarily nonsuited that separate action. On November 3, 2011, Luhowiak requested another extension of time to settle the estate, which the trial court granted.

On April 29, 2013, Luhowiak filed a motion requesting the trial court to grant him a judgment in the amount of $5,523.28 against McDougal for attorney's fees charged by Luhowiak in settling the estate. The court referred the matter to the Clerk & Master, who, after a hearing, found that McDougal breached his fiduciary duty as administrator. On October 3, 2014, the trial court entered an order confirming the C&M's report and entering judgment against McDougal. McDougal appealed. This Court "vacate[d] the trial court's judgment because the court failed to hold a hearing and failed to independently assess the merits of the master's report." *In re Estate of Burnette*, No. E2014-02522-COA-R3-CV, 2016 WL 626041, at *1 (Tenn. Ct. App., filed Feb. 16,

---

[2] The order states that "the Letters Of Administration issued to John D. Burnette for this estate are hereby revoked." Six years later, in 2012, the trial court entered an amended order explaining that "the Order should have removed both Co-Administrators, John D. Burnette and John G. McDougal."

2016). On remand, the trial court conducted an independent review and again confirmed the C&M's report. The court entered judgment against McDougal for attorney's fees charged by Luhowiak in the amount of $5,523.28. McDougal again filed a timely notice of appeal.

## II.

The issue on appeal is whether the trial court erred in holding McDougal, the original administrator, liable for the attorney's fees charged by the successor administrator of the estate.

## III.

Under Tenn. Code Ann. § 27-1-113 (Supp. 2015), our standard of review is affected by the trial court's referral of all or part of a case to a special master. "A concurrent finding of a master and chancellor is conclusive on appeal, except where it is upon an issue not proper to be referred, where it is based on an error of law or a mixed question of fact and law, or where it is not supported by any material evidence." *In re Estate of Ladd*, 247 S.W.3d 628, 636 (Tenn. Ct. App. 2007) (citing *Coates v. Thompson*, 713 S.W.2d 83, 84 (Tenn. Ct. App. 1986)). "We must affirm such a concurrent finding if there is any material evidence to support it." *In re Conservatorship of Duke*, No. M2015-00023-COA-R3-CV, 2015 WL 5306125, at *6 (Tenn. Ct. App. M.S., filed Sept. 3, 2015) (citing *Archer v. Archer*, 907 S.W.2d 412, 415 (Tenn. Ct. App. 1995); Tenn. R. App. P. 13(d)).

If a finding of a clerk and master is not concurrent with the trial court, we review the trial court's finding of fact de novo with a presumption of correctness unless the evidence preponderates against it. *Estate of Ladd*, 247 S.W.3d at 637 (citing Tenn. R. App. 13(d)). The trial court's conclusions of law are also reviewed de novo, but are accorded no such presumption. *In re Estate of Bennett*, No. E2004-02007-COA-R3-CV, 2005 WL 2333597, at *2 (Tenn. Ct. App., filed Sept. 23, 2005) (quoting *Southern Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)). We review a trial court's award of attorney's fees under the abuse of discretion standard. *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005) (quoting *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995)).

## IV.

It is well established that "[a]n executor of an estate occupies a fiduciary position" and owes certain duties to the estate and the beneficiaries. *Estate of Ladd*, 247 S.W.3d at 637. As we observed in *Estate of Ladd*,

the executor must deal with the beneficiaries in utmost good faith and "exercise the same degree of diligence and caution that reasonably prudent business persons would employ in the management of their own affairs."

In addition to general fiduciary duties requiring an executor to act with diligence and prudence, an executor owes specific duties to the estate and the beneficiaries of the estate. . . . The executor owes a duty to marshal and collect the assets of an estate within a reasonable time; discharge his statutory duties and distribute the estate in a timely manner; and close his administration as quickly as possible. This duty arises because the law favors prompt administration of estates. An executor also has a duty to communicate with beneficiaries and the court in a professional manner.

*Id.* at 637 (internal citations omitted); *see also* ***In re Estate of Schorn***, No. E2013-02245-COA-R3-CV, 2015 WL 1778292, at *8 (Tenn. Ct. App., filed Apr. 17, 2015) ("A personal representative has an affirmative fiduciary duty to marshal and collect the assets of an estate and to distribute the estate to the beneficiaries in a timely manner.").

Regarding attorney's fees incurred in the administration of an estate,

the executor, not the estate, is liable for the legal fees incurred unless and until the court determines the services were required and the fee was reasonable. ***Union Planters Nat. Bank v. Dedman***, 86 S.W.3d 515, 521 (Tenn. Ct. App. 2001) (citing ***In re Estate of Wallace***, 829 S.W.2d 696, 703 (Tenn. Ct. App. 1992)). If the fees can be shown to have been required and to inure to the benefit of the entire estate and not to one or more of the interested parties, the fees may be charged to the estate as an administrative expense. ***Id***.

***Estate of Ladd***, 247 S.W.3d at 638; *see also* ***Estate of Schorn***, 2015 WL 1778292, at *8 ("Generally, personal representatives are entitled to reasonable compensation for their services and to payment for reasonable expenses incurred in good faith for the necessary benefit of the estate.").

As the Supreme Court reiterated in ***Eberbach v. Eberbach***, 535 S.W.3d 467, 474 (Tenn. 2017):

Tennessee has long followed the "American Rule" with regard to attorney's fees. ***State v. Brown & Williamson***

***Tobacco Corp.***, 18 S.W.3d 186, 194 (Tenn. 2000). This Rule provides that "a party in a civil action may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case." ***Cracker Barrel Old Country Store, Inc. v. Epperson***, 284 S.W.3d 303, 308 (Tenn. 2009) (citing ***Fezell***, 158 S.W.3d at 359; ***John Kohl & Co. P.C. v. Dearborn & Ewing***, 977 S.W.2d 528, 534 (Tenn. 1998)). Otherwise, litigants are responsible for their own attorney's fees. ***Cracker Barrel Old Country Store, Inc.***, 284 S.W.3d at 309 (citing ***House v. Estate of Edmondson***, 245 S.W.3d 372, 377 (Tenn. 2008)).

In the present case, the successor administrator relies on two authorities in support of his argument that a previous administrator can be held liable for the attorney's fees charged by the successor administrator. The first is Hamilton County Local Rule 17.11, which provides as follows:

SUMMARY REMOVAL AND SANCTIONS
Failure to comply with statutory requirements or orders of the Court shall constitute grounds for summary removal of the personal representative. In addition, the Court may impose sanctions, such as forfeiture of earned fees and taxation of fees and costs against the defaulting party.

(Capitalization in original.) The second is the statutory scheme provided at Tenn. Code Ann. §§ 30-1-402, 30-1-151, 35-15-706, and 35-15-1001, -1004. Tenn. Code Ann. § 30-1-402 provides that

[a]dministrators, guardians and trustees shall, in all things, be governed by, and be subject to, all the laws, rules, duties, and penalties, prescribed by law for the government of other administrators and guardians, and the management and settlement of estates and trusts.

Tenn. Code Ann. § 30-1-151 states that "[a]ny executor or administrator may be removed in accordance with the procedures in § 35-15-706," which in turn provides:

(c) Pending a final decision on a request to remove a trustee, or in lieu of or in addition to removing a trustee, the court may order such appropriate relief under § 35-15-1001(b) as

6

may be necessary to protect the trust property or the interests of the beneficiaries.

Tenn. Code Ann. § 35-15-1001(b) states, "[t]o remedy a breach of trust that has occurred or may occur, the court may: . . . (10) Order any other appropriate relief whether provided elsewhere in this chapter, available at common law or under equity principles." Among the other relief "provided elsewhere" in chapter 15, section 35-15-1004 states:

> (a) In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

In the case of *In re Estate of Taylor*, No. M2012-00596-COA-R3-CV, 2013 WL 336001, at *2 (Tenn. Ct. App., filed Jan. 28, 2013), a successor administrator similarly sought fees against the former administrator:

> [the successor administrator] filed a document styled "Motion to Attribute Costs to Former Administrator Due to Defalcation While Acting in a Fiduciary Capacity"; [the successor administrator] attached an affidavit regarding costs caused by [the former administrator] and fee chart detailing attorney fees and expenses resulting from [the former administrator's] actions totaling $12,173. The court . . . entered an order finding that [the former administrator] "committed acts of malfeasance and defalcation [when] acting in a fiduciary capacity, to wit: administrator *c.t.a.* of the said estate" and assessing costs and fees of $12,173 to him.

This Court affirmed the award of attorney's fees to the successor administrator, stating:

> Tenn. Code Ann. § 30–1–308 provides that "[t]he administrator, when appointed, shall be a party to the proceedings in court, and shall be bound by any decree or order in the cause." [The former administrator] served as the Public Administrator for Wilson County and, in that capacity, petitioned the court to administer the Ann Taylor Estate; upon his appointment he became a party to the proceedings. Accordingly, the court had personal jurisdiction over [the former administrator].

7

*       *       *

> The $12,173 which [the former administrator] was ordered to
> pay was to reimburse the estate for time spent by the
> substitute administrator in attempting to get the records held
> by [the former administrator] in order to prepare an inventory,
> in preparing the same, and in completing the orderly
> administration of the estate; the time was substantiated on
> affidavits filed with the court. [The former administrator]
> failed to turn over the records of the estate in accordance with
> the order; his failure to cooperate with the court, as well as his
> failure to faithfully perform his duties as administrator,
> delayed the administration and caused the estate to incur
> unnecessary fees. It was within the court's power and
> authority in supervising the administration of the estate to
> order that he reimburse the estate for the expenses it incurred
> which were specifically attributed to his malfeasance.

*Id.* at *4-5 (footnotes omitted).

In this case, McDougal does not argue that the trial court lacked authority to award
attorney's fees, but rather that there is no material evidence that he breached his fiduciary
duties to the estate under the circumstances. Both parties cite and rely on the following
principle in support of their respective arguments:

> Generally, courts are cautious not to hold executors liable
> upon slight grounds. *See* 2 PRITCHARD [ON WILLS AND
> ADMINISTRATION OF ESTATES] § 734, at 328 [5th ed. 1994].
> Rather, an executor who acts reasonably and in good faith
> while carrying out his duties will be shielded from liability if
> his judgment simply turned out to be wrong in light of
> subsequent events. *Id*. An executor who fails to
> competently, prudently, and reasonably discharge his duties
> as required by law, however, finds no protection in his lack of
> judgment as viewed in hindsight. *Id*. at 328–29; *see also*
> *McFarlin* [*v. McFarlin*], 785 S.W.2d [367,] 372 [(Tenn. Ct.
> App. 1989)].

*Estate of Ladd*, 247 S.W.3d at 637-38. Thus, the question, restated, is this: under the
facts as found by the C&M and trial court, was McDougal an administrator who acted
"reasonably and in good faith while carrying out his duties" but whose "judgment simply
turned out to be wrong in light of subsequent events," or did he fail to "competently,

8

prudently, and reasonably discharge his duties as required by law"?  *Id.*  We agree with McDougal's argument that his conduct places him in the first category.

It is undisputed that the proceeds from the sale of decedent's real estate are the primary, if not only, asset of the estate.  The trial court found "the estate is inessentially insolvent."  After Burnette took the check and deposited it in a Florida bank account, there was no other estate asset to marshal or pursue, although it took McDougal some time to discover and confirm this.[3]  The trial court held that "McDougal, as an attorney, should have been on guard against entrusting Mr. Burnette with estate assets." McDougal testified without contradiction that at the time he entrusted the check to Burnette, he had no reason to suspect or anticipate what happened:

> Once the check was given, it was made out to the estate.  It was for deposit – I believe for deposit only, . . . I mean he couldn't run off and cash it, wouldn't do that.  I had no idea Mr. Burnette, because Mr. Burnette was co-administrator, he had been cooperating with everything, and so . . . he was going to take it down to, at the time which was American National Bank, now it's SunTrust, I think.
>
> Q: Okay.  So you had the check and you gave it to Mr. Burnette to deposit, open up the estate account?
>
> A: Yes.
>
> Q: Okay.  Did you endorse the check?
>
> A: No, I think – I don't recall endorsing it, but I do recall that it was supposed to be for deposit – and he did deposit it, he just deposited it in Florida instead of Tennessee.
>
> *         *         *
>
> And he [Burnette] was the representative.  He was the one that . . . basically had prepared, he had cleaned up the house, he had prepared the house for sale, he was getting everything together.  And like I said, he was doing fine and we had no idea that there was any problem until when the house was

---

[3] McDougal testified that Burnette told him that decedent had a certificate of deposit in the amount of $60,000.  McDougal said that he spent a significant amount of time and effort trying to locate the CD, but it was never found, and there is no proof it actually existed. McDougal received no compensation from the estate for his expenditure of time on the case.

sold, he took the check down to Florida and deposited it down there.

> *   *   *

Q: So when you started this estate, how was your relationship with Mr. Burnette – good, bad?

A: It was good because originally he had hired me to go – he was going to hire me to help them out to go ahead and set up a conservatorship.

Q: Okay.  So at least a way that the estate began, you and he were getting along fine?

A: Yes.

Q: Have any reason to distrust him?

A: No.

Q: Have any reason to believe that he would commit a fraud or anything of that nature?

A: No, not even when he deposited the money down in Florida, I thought he just made a mistake, he thought he was going to put in down there, and I explained to him that according to the law, it was supposed to be up here in Tennessee.

Burnette, as co-administrator of the estate, had the legal right and authority to take *possession* of the check made out to the estate.  There is no evidence in the record contradicting McDougal's testimony that he had no reason to mistrust Burnette when he gave him the check with instructions.

The successor administrator argues that McDougal knew, or should have known, that Burnette was dissatisfied with the decision of the surviving spouse to file for an elective share of the estate.  However, McDougal testified that "*later on* we found out that he was upset with the fact that the [widow] had gone back on her word and had filed for her support and the third of the estate."  In short, there is no evidence that supports a conclusion that McDougal was negligent because he should have known that Burnette was likely to abscond with the proceeds of the real estate sale.

10

After Burnette returned to Florida, he hired an attorney, who, according to McDougal, rebuffed his efforts to communicate with Burnette. McDougal said he requested information from the attorney about where Burnette resided and which bank account he deposited the check in, and none was forthcoming. When asked if he conducted an independent investigation, McDougal replied, "No, and the reason for it is there was just no money to do it, and plus, I had no idea where to go to." He believed that Burnette, who worked as a pizza delivery person, generally had few assets, and that it would not have been worth the cost and effort to hire a Florida attorney and sue Burnette there. McDougal testified that he attempted to have criminal charges brought against Burnette, but that the Hamilton County district attorney declined, considering it a civil matter.

The trial court held that "[i]t is simply unfathomable that an attorney, a fiduciary, or even a lay person would be held in contempt on August 2, 2001, and respond thereto with silence until June 18, 2004." (Underlining in original.) The record does not reveal the precise date on which McDougal became aware that Burnette absconded with the check, nor the precise date on which McDougal first informed the trial court of this development. However, the trial court's August 2, 2001 order clarifies that by that date, the court was aware that the check "had been transferred to Florida where co-administrator John D. Burnette resides, and that said funds were no longer available." The order states that "the Court found that the administrators of the estate shall be found in contempt." But, as already noted, the language stating "[i]t is, further, ORDERED that the administrators of the estate shall be held in contempt of the Court with further penalties, if any, to be determined at a later hearing of this Court" is struck through with a handwritten line. Moreover, the show cause order entered by the trial court on June 11, 2001, states as follows:

> It appearing that a motion for contempt has been filed in this case and it further appearing that it is appropriate to have a hearing with respect to this matter, it is hereby ORDERED that *John David Burnette be and hereby is ordered to appear* before this Court on the 18th day of June, 2001, at 9:00 a.m. to show cause, if any there be, why the personal representatives should not be held in contempt of this court's order dated November 16, 2000 requiring the payment of certain sums of money. It is further
>
> ORDERED that the motion of John David Burnette to dismiss John G. McDougal as attorney for the Estate is passed to June 18, 2001 at 9:00 a.m.

(Emphasis added; capitalization in original.) As can be seen, the show cause order mandates only *Burnette*, not McDougal, to appear and show cause why a contempt order

11

should not issue. In short, both the contempt order and the circumstances surrounding it are ambiguous. There is no indication that McDougal ignored or circumvented an order of the trial court. If he was indeed held in contempt, the trial court took no further action against him after the contempt finding. We hold that the contempt order does not provide a ground to saddle McDougal with his successor's attorney's fees under the particular circumstances of this case.

Finally, as regards the extensive delay in settling this estate, the record reflects two periods of dormancy in the case. The first begins after the contempt order was entered on August 2, 2001. Nothing was filed with the trial court thereafter for nearly three years, although McDougal testified that he still conducted work for the estate during that time. On April 6, 2004, the C&M filed a notice ordering that the settlement of the estate be filed by April 27, 2004. McDougal responded with a "motion for instructions" seeking guidance from the court as to how to proceed. The second period of dormancy begins with the letter of administration appointing Luhowiak as successor administrator, issued on September 7, 2006. Nothing was filed with the trial court thereafter for four years, when the C&M filed a notice to Luhowiak on September 15, 2010, ordering him to file the settlement of the estate by October 13, 2010. It is abundantly clear that *neither* administrator was inclined to spend money on behalf of the estate that it did not have in order to pursue the likely fruitless endeavor of recovering the estate's only asset. We hold that the delay in this case in administering the estate, though unfortunate, does not provide a ground for the trial court's award of attorney's fees against the prior administrator.

## V.

The trial court's judgment is reversed. Costs on appeal are assessed to the appellee, successor administrator G. Michael Luhowiak. The case is remanded for entry of judgment in accordance with this opinion and collection of costs below.

_____
CHARLES D. SUSANO, JR., JUDGE

12